ONONDAGA GENERAL TERM, November, 1850.    *Gridley, Allen, and Hubbard*, Justices.

## MILLIMAN *vs.* THE OSWEGO AND SYRACUSE RAILROAD COMPANY.

The provision of the general railroad act of 1848, requiring railroad companies to erect *farm crossings* for the use of the proprietors of land adjoining such railroads, is not applicable to corporations existing before the passage of that act, and who had previously obtained the right of way for their road, and paid the landowners the damages sustained by them.

THIS cause originated in a justice's court. The complaint alledged that in the year 1847 the defendants commenced the construction of a railroad from Oswego to Syracuse, intersecting the plaintiff's premises in the town of Lysander; that the road was constructed and put in operation in the years 1847 and 1848, and being the owners and possessors of said road, the company were required by law to erect and maintain a suitable *farm crossing*, for the use of the plaintiff, which the defendants omitted to do, whereby the plaintiff sustained damages, &c.

The action was commenced in April, 1850. On the trial the defendants objected to evidence as to damages, on the ground that they were under no legal obligation to build a crossing for the plaintiff; and also because it did not appear but that they had acquired the title to their roadway before the passage of the general railroad law of 1848. The court overruled the objection, deciding that the defendants were bound to build a farm crossing for the plaintiff under the statute of 1848, whether they acquired the title to their roadway prior or subsequent to the enactment of that law. Evidence of damages was therefore received, and a judgment rendered against the defendants for the sum of $25, which judgment was reversed by the Onondaga county court, and the plaintiff appealed to this court.

*Church & Groves*, for the appellants.

*J. L. Bagg*, for the respondents.

Milliman *v.* The Oswego and Syracuse Railroad Company.

*By the Court,* HUBBARD, J. The important question presented is, whether by the provisions of the general railroad law, (*Sess. Laws,* 1848, *p.* 222, §§ 42, 46,) the defendants were required to erect and maintain a *farm crossing* for the use of the plaintiff. The justice held they were, and this is the principle of his judgment. It is not disputed that the defendants acquired the right of way for their road *before* the passage of the general law referred to; but the plaintiff contends, that nevertheless that law is applicable to the defendants, and to all pre-existing railroad corporations in the state, and that *all* are now required to erect and maintain crossings, or be responsible for resulting damages. This position we think fallacious, and in sustaining it the justice rendered an erroneous judgment.

1. At the time the defendants obtained their charter and acquired their right of way, no legal obligation rested upon them to erect farm crossings. Landowners however were not without redress for the obstruction and inconvenience occasioned by the road; they were entitled to full compensation in damages for such injury, and this before the land could be taken or occupied for the purposes of the road.

By the provision of the defendants' charter, (*Sess. Laws* 1839, *p.* 254; *Id.* 1836, *p.* 319,) the jury, in assessing damages, were required to " assess the value of the land taken, and the damages the owner might sustain by taking the land, by injury to buildings, and in the *construction of such road,* without making any deduction for supposed or real benefits of the road to the owner of the land." This field of assessment is certainly broad enough to embrace a compensation for any obstruction occasioned by the road, in passing from one portion of an intersected farm to another; and it must therefore be presumed that the plaintiff in this case *has been fully remunerated* for such inconvenience, equivalent to the expense of constructing a suitable crossing at his private expense. Upon this presumption there would be neither justice nor propriety in compelling the defendants to make a second remuneration. In these crossings the public are not interested : they are intended for the sole advantage of individual landowners, and by the general railroad law were required

Milliman *v.* The Oswego and Syracuse Railroad Company.

to be made, as a specific mode of compensation for the injury and inconvenience incident to the division of a farm; in other words as one item of compensation for the right of way. To require railroad companies to repurchase, in whole or in part, a right of easement previously obtained and paid for, would not only be rigorous but not within the powers of legislative authority, upon the principle of the constitution forbidding the taking of private property for public use without compensation. In effect such a requisition would take from the pocket of the defendants and put into that of the plaintiff, whatever the expense of a farm crossing might be, without the least equivalent in return.

2. But I apprehend the legislature has not undertaken to subject pre-existing railroads to the burden of erecting farm crossings. The 42d section of the act of 1848, above referred to, is as follows : " Such corporations shall erect and maintain fences, on the sides of their road, of the height and strength of a division fence as required by law, with openings and gates therein, and *farm crossings* of the road for the use of the proprietors of land adjoining such railroad." In terms this section refers to all railroad corporations in the state, without reference to charter dates, or the time of the acquisition of the right of way; but in applying the section to corporations existing before the law was passed, sufficient attention has not been given by the plaintiff to the 46th section, as follows : " All existing railroad corporations within this state shall respectively have and possess all the powers and privileges, and be subject to all the duties, liabilities and provisions contained in this act, so far as they shall be *applicable to their present condition and not inconsistent with their respective charters.*"

The policy of the general railroad law was to obviate special charters, and to secure, as far as practicable, uniformity of rights, duties and liabilities. Its language therefore is comprehensive; general provisions and terms are used; but the section last quoted qualifies its application to companies previously established. Such companies are entitled to the advantages, and can be subjected to the burdens of that law, only " *so far as applicable to their present condition and consistent with their respec-*

*tive charters.*" The precise inquiry upon this appeal now arises, Is the erection of a farm crossing, as claimed in this suit, applicable to the *present condition*, or *consistent with the defendants' charter ?* I think it is not with either, for the reason already stated, that before that law was passed, the defendants had acquired the right of way and compensated the plaintiff for the very injury or inconvenience of which he now complains, to wit, the obstruction in passing from one portion of his farm to another, across the railroad track. It would therefore be manifestly repugnant to the right of easement acquired by the defendants in pursuance of the provisions of their charter, to compel them to make such erection, or to respond in damages upon default, and hence inconsistent with their present condition.

The plaintiff's counsel, however, insists that the legislature having reserved the right to *alter* or *amend* the defendants' charter, the general railroad law, in the particular of farm crossings, should be construed as an alteration or amendment. The answer to this position is, that the right thus reserved to alter or amend, refers to some matter of public concern; some matter in which the community are interested; for instance in relation to fare, tolls, the prevention of accidents, or the security of property, &c.; but not to an alteration or amendment, solely of individual advantage, and especially such as, in this case, where the alteration seriously affects rights of property previously acquired. Our conclusion therefore is, that in regard to farm crossings, the general railroad law of 1848 is not applicable to corporations existing before its passage, having previously obtained the easement for their road.

The judgment of the county court reversing that of the justice must be affirmed.