MARSH *vs.* THE NEW-YORK & ERIE RAILROAD COMPANY.

The statutes of 1848 and 1850, requiring railroad companies to fence their roads, render the companies responsible when they omit to make the fences, &c. if the damages are caused by *them;* whether from carelessness, mismanagement, or willfulness, or from inevitable accident. But they do not make them answerable for the carelessness or willful misconduct of those who, from such causes, sustain injuries from them.

A railroad company, by omitting to fence its road, is not made responsible for injuries done by their locomotive to cattle straying upon their track through the negligence and carelessness of their owner.

It is gross negligence for a person to suffer his cattle to go at large on the highways, in the immediate vicinity of a railroad; whether the railroad be fenced or not. *Per* S. B. STRONG, J.

THIS was an appeal by the defendants from a judgment of the Orange county court. The action was originally commenced before a justice of the peace, to recover the value of a cow be-

Marsh *v.* New-York and Erie Railroad Co.

longing to the plaintiff, killed by the engine of the defendants, upon their road, in April, 1850. The plaintiff claimed to recover on the ground of the defendants' neglect to fence their road at the place where the cow was killed. The defendants, in their answer, denied the allegations in the complaint, and gave notice that they would prove the cow killed was, at the time, unlawfully on the railroad track, and was a trespasser thereon; and that she was killed in consequence of the negligence and misconduct of the plaintiff. The killing of the cow was proved. She was running on the railroad track at the time, at a place where the railroad was not fenced. She was usually pastured in the highway and commons, and had been seen running at large, in the road, on the morning of the day on which she was killed. The justice overruled a motion for a nonsuit, and rendered a judgment in favor of the plaintiff, for the value of the cow; and on appeal the county court affirmed the judgment.

*C. H. Winfield,* for the plaintiff.

*J. J. Monell,* for the defendants.

S. B. STRONG, J. The 42d section of the 140th chapter of the laws of 1848, and the 44th section of the 140th chapter of the laws of 1850, are applicable to the defendants. The act by which they were incorporated, (*Laws of* 1832, *p.* 409, § 21,) expressly reserved to the legislature the power to alter, modify or repeal it; and without such express reservation the power would have been retained to make such provisions in reference to the newly created corporation, as the public safety might require; and the requisition that railway companies shall fence their roads, is one of that character. The sections of the acts of 1848 and 1850, which I have quoted, after requiring railroad companies to erect and maintain fences on the sides of their roads, and cattle guards at all road crossings, provide that until said fences and cattle guards shall be made, the corporations and their agents shall respectively be liable for all damages

Marsh *v.* New-York and Erie Railroad Co.

which shall be *done* by *their* agents or engines to cattle, horses or other animals thereon, but that after such fences and cattle guards shall be made, the corporation shall not be liable for any such damages, unless from acts negligently or willfully done. These provisions render the companies responsible when they omit to make the fences or cattle guards, if the damages are caused by *them*, whether from carelessness, mismanagement, or willfulness, or from inevitable accident. But they do not make them answerable for the carelessness or willful misconduct of those who from such causes sustain injuries from them. If one should willfully or negligently place or leave a horse upon the track when the train was approaching, and the horse should be killed, although there should be no fences or cattle guards upon the road, he assuredly could not recover any damage for his loss. It is true that in such case the misfeasance of the company would not cause the loss; neither would it in any case where it would not have occurred except from the misconduct or negligence of the person injured. Where the damage would not have been sustained but for his fault, the company cannot be said, with truth, to have caused it, either by their agents or engines, and therefore the case is not within the statute. In other words, an injury inflicted by the joint agency of two distinct parties, and which would not have happened without the acts of both, cannot be said to have been caused by either of them. It is well settled that a party in fault shall not recover compensation for an injury which would not have befallen him, without it. It could not have been the design of the legislature, in making the provisions which I have quoted, to prevent the application of so just and appropriate a rule to allow one to recover damages caused by his own negligence or folly, or which would not have happened without it. It is enough to make railroad companies responsible for damages, resulting from their omission to fence their roads, to innocent parties. That will protect those whose cattle have strayed from their enclosures without their knowledge or fault, or have casually passed over the track when carefully driven on the highway crossing it, or in its vicinity.

There is no question but that the accident of which the plain-

tiff complained was the result of his own carelessness, and would not have happened without it. His own witness testified that the cow pastured in the road and common; that there was no fence around the roads where she was suffered to go at large ; that she was oftentimes in the highways, and that the witness saw her on the highway on the morning of the day on which she was killed at night, at large, without any one with her. There was no evidence that cattle were permitted to pasture on the highways, in the town of Deerpark, where the accident occurred, by any by-law, if indeed a town by law could sanction the practice. And if there had been a lawful ordinance to that effect, it would not have justified the plaintiff's negligence, or exempted him from its consequences. A man may most assuredly be guilty of culpable negligence whilst engaged in a lawful pursuit. That it is gross negligence for a man to suffer his cattle to go at large on the highways, in the immediate vicinity of a railroad, there can be no doubt. Even if the road is fenced pursuant to the statute, the cattle may wander upon it through the necessary openings at the crossing places, or over a breach in the fence, which may have been recently made by some one not connected with the road, and then the probability of their being run over is greater than if the railroad had not been fenced at all. The owner not only endangers the lives of his cattle, but jeopardizes the lives and property of the passengers over the road. To suffer him to recover damages for the loss of his property, under such circumstances, would be not only against private rights but contrary to public policy. In the case of the *New- York & Erie Railroad* v. *Skinner*, before the supreme court of Pennsylvania, reported in the American Law Register for December, 1852, it was well remarked by Judge Gibson, in giving the opinion of the court, (*p.* 102,) that "Any obstruction of a railway is unlawful, mischievous and abatable at the cost of the owner or the author of it, without regard to his ignorance or intention. It may seem cruel to make a dumb beast suffer for the fault of its owner; but it must be remembered that the lives of human beings are not to be weighed in the same scales with the lives of a farmer's or grazier's stock, and that their preservation is

not to be left to the care which a man takes of his cattle.   Allowing them to prowl for their food, he may not wash his hands from the consequences of it.   In a country so obnoxious to the charge of indifference to human safety, it is a high and holy charge of the courts to hold to their duty not only those to whom it is immediately committed, but also those by whose defaults it may be remotely endangered; and to hold them hard.   We are of opinion that an owner of cattle (suffered to stray upon the public highway) killed or injured on a railway, has no recourse to the company, or its servants."   In that case the court reversed a judgment against the railroad company, on the ground that the plaintiff, who had sued and recovered for a cow killed on the track, had voluntarily suffered her to go at large, although the evidence to that effect was slight.   In the case under consideration there was no question as to the carelessness of the plaintiff: that was clearly proved by his own witnesses.   In the cases of *Suydam* v. *Moore*, (8 *Barb.* 358,) and *Waldron* v. *The Rensselaer & Saratoga Railroad Company*, (*Id.* 390,) there was no sufficient proof of carelessness of the owner of the beast which had been killed.   In the case last cited, Judge Willard said, that "the plaintiff, though his horse was wrongfully in the road, is not proved to have been guilty of negligence. He took the usual precaution to secure him."   That the proof was "that the horse was in the pasture, the evening of the accident, *and the fence secure.*"   Neither of these cases decide that one who suffers a loss, from his own carelessness, even from a railroad company, can recover the consequent damage.

The justice of the peace before whom this action was tried, and the county judge who reviewed his decision, must have acted upon the supposition that the defendants, by omitting to fence their road, were responsible for injuries done by their locomotive to cattle straying upon their track, however culpable the owner may have been, in neglecting his own property, and disregarding the lives of his fellow men.   In this they erred, and the judgment of each should be reversed.

BROWN, J. The plaintiff's action in the justice's court proceeded upon the ground that the omission of the defendant to construct and maintain the fences and cattle guards, according to section 44 of the act "to authorize the formation of railroad companies, and to regulate the same," passed April 2, 1850, rendered it liable "for all damages done by its agents or engines to cattle, horses, or other animals," being upon the road, under whatever circumstances the injury may have occurred, and notwithstanding the misconduct of the owner may have contributed to produce the damage sustained. If this doctrine can prevail—if it be true that the absence of these fences and cattle guards from the sides of the road, relieves the owner of all care and attention over his horses and cattle, and if he may willfully or negligently suffer them to wander and stray in front of a train of cars in full motion, and then recover damages for any loss or injury he may thereby sustain, then the statute will receive a construction in conflict with the plainest dictates of justice or common sense.

The New-York and Erie Railroad Company was an existing corporation at the time the railroad act of the 2d of April, 1850, took effect, and it had acquired the title to the lands, and constructed the road according to the provisions of its charter over the ground where the plaintiff's cow was killed, several years before the passage of any of the acts which imposed upon railroad companies the obligation of erecting fences and cattle guards. The principle of equitable contribution between the owners of adjoining lands, in respect to partition fences, was applied by the chancellor to railroad corporations and other adjoining owners, in the *Matter of the Rensselaer & Saratoga Railroad Company*, (4 *Paige*, 553;) and he there held, that in the absence of special provision on the subject in the act of incorporation, the company was bound to make and maintain one half of the partition fences. It is fair, therefore, to presume, that when the defendant acquired the title to the lands for its road, a just and proper allowance was made to the land owner for the erection and maintenance of the whole or of one half of the fences, the omission to make which is the sole foun-

dation of the plaintiff's action. The 49th section of the act of
April 2, 1850, provides that "all existing railroad corporations
within this state shall respectively have and possess all the
powers and privileges contained in this act; and they shall
be subject to all the duties, liabilities and provisions not in-
consistent with the provisions of the charter contained" in
the sections enumerated, and amongst others of section 44.
Sections 42 and 46 of the general railroad act of the 27th
March, 1848, are substantially similar in their provisions with
sections 44 and 49 of the act of the 2d April, 1850. The
two sections of the act of March 27th, 1848, came up for
consideration at a general term of this court for the fifth district,
where it was determined that the provision creating the obliga-
tion to erect fences was inconsistent with the provisions of the
charters of those companies who had already acquired the right
of way, and compensated the owner therefor, because "it would
be manifestly repugnant to the right of easement thus acquired,
in pursuance of the provisions of the charter, to compel the com-
pany to make such erection, or to respond in damages for the de-
fault." (*Milliman* v. *The Oswego & Syracuse Railroad Co.*, 10
*Barb*. 87.) The reason and good sense of this decision is appar-
ent, and until reversed, must be regarded as the law of this court.

The occasion is not inappropriate for the expression of an
opinion upon what must be regarded as the main question in this
action. Assuming, therefore, for the present, that there is an
obligation resting upon the defendant to erect and maintain the
fences and cattle guards, as provided in section 44 of the act of
1850, it may be worth while to inquire how far the plaintiff is
relieved from the operation of the rule of the common law, which
requires a plaintiff seeking to recover damages against another
for negligence, to acquit himself of fault, and show that his own
negligence and misconduct did not contribute to bring about the
accident of which he complains. (*Rathbun* v. *Payne*, 19 *Wend*.
399. *Tonawanda Railroad Co.* v. *Munger*, 5 *Denio*, 255.)
The argument of the plaintiff is, that the statute must have a
liberal interpretation; that the provision is not limited in its
application to animals rightfully being on the adjoining lands,

Marsh v. New-York and Erie Railroad Co.

and to those rightfully passing over the public highway, but that corporations who omit to make the erections are also liable for injuries done to animals wrongfully being on the adjoining lands, and wrongfully depasturing in the public highway and in the track of the railroad. The argument must go this length, or it cannot aid the plaintiff in this action. The rule of equitable contribution, referred to by the chancellor in the matter of the Rensselaer & Saratoga Railroad Company, has been changed and new duties and obligations and liabilities imposed upon the corporations. The act must have a reasonable and sensible interpretation, and we must suppose that the provision under consideration was inserted to effect a reasonable and sensible purpose. That purpose manifestly is the protection of cattle and other animals rightfully being upon the adjoining lands, and rightfully passing over the public highway. The owners of animals in either of these conditions, that casually stray upon the track of a railroad, where there are no fences or cattle guards, and are injured, have their action therefor against the company, and the want of such erections can no longer be imputed to such owners as a fault, because the duty of erecting them has been imposed upon the company. But I apprehend the statute was not designed to change the rule of the common law applicable to such cases, where the injury proceeds as well from the fault of the owner of the animals as from the omission of the company. The owner who drives his animals out to depasture upon an unfenced railroad track, when he has no adjoining lands, and one who turns his animals out to depasture upon a public highway, contiguous to such track, when he has no right except the mere easement in common with the public, stand in the same predicament; and if injury results to the animals from contact with the railroad trains, the owners in both cases are equally in fault and equally without remedy.

In the present case the plaintiff was not the owner or occupant of any lands adjoining or in the vicinity of the road. He was not driving his cow over the public highway for the ordinary purpose of travel in passing from one place to another, as he lawfully might do. But the proof is, that he pastured her upon

the open and unfenced woodlands adjoining the road, and suf-fered her to run at large on the public highway. She was seen running at large on the highway in the morning of the day on which she was killed, and the presumption is, she wandered upon the track of the road, where she was killed, the road being unfenced, and the adjoining land uncultivated, mountainous country. The conduct of the plaintiff was in all respects equiv-alent to pasturing his cow upon the track of the road, as there was nothing whatever to prevent her going thereon from the highway in the immediate vicinity where she habitually run. The injury was as much the immediate result of the wrongful act of the plaintiff as it was the result of the wrongful omission of the defendant, assuming that it was subject to the operation of the 44th section of the act of the 2d April, 1850.

The point presented, by the record in this case, was not raised in *Suydam* v. *Moore,* (8 *Barb.* 308.) There was no evidence to show where the cow was kept, or from what close or locality she came upon the railroad. The only evidence upon that branch of the case is, that she " stepped on to the track a short distance in front of the engine." In *Waldron* v. *The Rensse-laer & Saratoga Railroad Co.,* (8 *Barb.* 390,) the point was taken that the plaintiff was not himself without fault, and Mr. Justice Willard, who delivered the opinion, proceeds to show that no negligence could be imputed to the plaintiff, in the fol-lowing words : " It is urged that the plaintiff was in fault, be-cause his horse was in the street. The proof is, that the horse was in the pasture the evening of the accident, and the fence secure. The gate was found open in the morning, through which the animal had probably escaped. There is no proof to show by whom it was left open. We can no more presume that the plain-tiff left it open, than we can presume that the defendant's en-gineer omitted to ring the bell. The plaintiff, therefore, though his horse was wrongfully in the road, is not shown to have been guilty of any negligence. He took the usual precautions to secure him. And if in other respects the action is sustain-able, he is not to be defeated because his horse escaped from the pasture through a gate left open by somebody." This language

Herkimer County Mutual Ins. Co. *v.* Fuller.

affirms the rule that the action cannot be sustained if the mis-conduct of the plaintiff contributed to produce the injury of which he complains.

The judgment of the courts below should be reversed.

BARCULO, J. concurred.

Judgments reversed.

[DUTCHESS GENERAL TERM, October 4, 1852. *Barculo, Brown* and *S. B. Strong,* Justices.]

———————•◦•———————

# THE HERKIMER COUNTY MUTUAL INSURANCE COMPANY *vs.* FULLER.

The directors of a mutual insurance company do not act judicially in making assessments upon premium notes.

Having ascertained that the company is liable for a loss, and that it has not sufficient funds to pay the same, the directors are to ascertain who were the members of the company at the time the loss occurred, and then their assessment is to be made upon each in the proportion which the amount of his deposit note bears to the amount of all the deposit notes.

They have no right to take into consideration the length of time any person has been a member, in determining the amount of his assessment, or whether he shall be assessed at all.

If they omit to assess the deposit notes of any persons who are then members, and liable for their proportions of the losses; or if they include in the assessment the amount of previous assessments, from the payment of which the parties assessed have been released, the assessment is invalid.

THIS action was brought upon a premium note executed by the defendant to the plaintiffs, on effecting an insurance with them. The note was for $441, dated January 31, 1848. The complaint alledged that the directors of the plaintiffs' company, having received notice of certain losses and damage by fire, and having ascertained the amount of such losses and damages, did, on the 19th day of November, 1849, " settle and determine the sums to be paid by the several members thereof, as their re-