May Term, 1855.

THE LAFAYETTE AND INDIANAPOLIS RAILROAD COMPANY *v.* SHRINER.

THE LAFAY-
ETTE AND IN-
DIANAPOLIS
RAILROAD
COMPANY
v.
SHRINER.

Section 2 of the act of 1853 to provide compensation to the owners of animals killed or injured by the cars, &c., of any railroad company, &c., excludes from the consideration of the jury, in a suit against any such company for the destruction of stock by their cars, any consideration of the question whether the injury was the result of wilful misconduct or negligence, or of unavoidable accident.

That act is not applicable to a case where the injury is done by the cars at the crossing of a public street in a city, the company having no right to erect a fence thereon.

In a suit, under the common law, against a railroad company, for an injury done by their cars to animals, the question whether the injury was occasioned by negligence, misconduct, or unavoidable accident, is open for the consideration of the jury.

The common law imposes on the owner of domestic animals the duty of keeping them on his own land or within enclosures, and he becomes a wrong-doer if any of them escape or stray off upon the lands of another person.

This, as a general rule, is the law in this state.

If an animal is wrongfully on the track of a railroad, but is injured, while on the same, by the gross negligence or wilful misconduct of the company's agents, the company is liable.

The law requires that a train of cars in passing through a town shall be run with a greater degree of care, and hence at a less rate of speed, than is generally observed in the movement of the train.

APPEAL from the *Tippecanoe* Court of Common Pleas.

*Monday,
May 28.*

DAVISON, J.—This action was originally commenced before a justice of the peace, to recover the value of a cow injured and destroyed by a locomotive of said company, while running on their road. The justice gave judgment in favor of *Shriner*, the plaintiff below, for 30 dollars. The company appealed. In the Common Pleas, the Court tried the cause and found for the plaintiff 30 dollars, rendered a judgment in his favor for 60 dollars, and also for a docket-fee of 5 dollars, and costs of suit.

The following are the material facts: The cow described in the complaint was worth 30 dollars, and belonged to *Shriner*. On the 22d of *December*, 1853, she was seen on the track of the *Lafayette and Indianapolis Railroad*, with other cows, within the corporate limits of the town of

May Term,
1855.

The Lafay-
ette and In-
dianapolis
Railroad
Company
v.
Shriner.

*Lafayette*, at a place where the track crosses one of the streets of said town. A locomotive and train of cars were then approaching. When some fifty yards from the cows, the whistle of the locomotive was blown in the usual way, but the speed of the train was not slackened. It was going rather faster than usual. All the cows got off the track; but directly afterwards the plaintiff's cow attempted to cross in front of the locomotive, was caught, thrown off the track and greatly injured. No attempt was made to stop the train. After the cow was thrown off it passed on.

The plaintiff resided in *Lafayette*, some squares from the railroad. For two years prior to the time the cow was injured, she had been permitted to go at large during the day, going wherever she pleased, unrestrained, and frequently crossing the railroad track. She was stabled at night.

The general custom of the larger number of persons living in *Lafayette*, and owning cows, was, both before and since the construction of said road, to let them go at large to pasture.

The railroad track is not fenced.

Upon the case made by the evidence, it becomes necessary for us to inquire, whether the injury to the cow arose under circumstances which render the company liable in this action. This is the general question in the case.

An act approved *March* 1, 1853, provides—

1. " That whenever any animal or animals shall be killed or injured by the cars or locomotives, or other carriages used on any railroad in this state," the owner may sue before a justice of the peace.

2. " On the hearing of said cause, the justice or jury trying the same shall give judgment for the plaintiff for the value of the animal destroyed or injury inflicted, without regard to the question whether such injury or destruction was the result of wilful misconduct or negligence, or the result of unavoidable accident.

3. " If the defendant shall appeal from such judgment, and shall not reduce the damages assessed twenty per

cent., the appellate Court shall give judgment for double the amount of damages assessed in such appellate Court, and a docket-fee of five dollars.

4. "This act shall not apply to any railroad securely fenced in and such fence properly maintained by such company." Acts of 1853, p. 113.

It has been decided in *New-York* that "a railroad company, by omitting to fence its road, is not made responsible for injuries done by their locomotive to cattle straying upon their track, through the negligence or carelessness of their owner." *Marsh* v. *The N. Y. and S. Railroad Company*, 14 Barb. 364.

This case is relied on by the appellant as directly in point. The decision itself may be correct; but it is based upon a statutory provision which seems to be essentially dissimilar to the one above quoted. The *New-York* statute, after requiring railroad companies to erect and maintain fences on the sides of their roads, and cattle-guards at all road crossings, provides that until such fences and cattle-guards shall be made, the corporations and their agents shall respectively be liable for all damages which shall be done by their agents or engines, to cattle, horses, or other animals thereon; but after such fences and cattle-guards shall be made, the corporation shall not be liable for any such damages, unless from acts negligently or wilfully done.

This provision the Court, in the case cited, say, renders the companies responsible when they omit to make fences or cattle-guards, if damages are caused by them, whether from carelessness, wilfulness, or inevitable accident; but it does not make them answerable for the negligence or wilful misconduct of those who, from such causes, sustain injury from them.

This may be a correct exposition of the legislative enactment upon which the above decision is founded; but our statute, it seems to us, will admit of no such construction. It provides that judgment shall be given for the plaintiff, "without regard to the question whether such injury or destruction was the result of wilful misconduct or negligence,

May Term,
1855.

The Lafay-
ette and In-
dianapolis
Railroad
Company
v.
Shriner.

or the result of inevitable accident." As we understand the second provision, it excludes entirely the questions of negligence, unavoidable accident, and even wilful misconduct, from the consideration of the justice or jury trying the cause. In effect, the act declares that these questions shall not be raised by either party, in any case prosecuted under it, when it is shown that the company have omitted to fence their road. *Williams* v. *The New-Albany and Salem Railroad Company*, 5 Ind. R. 111.

But the main question to be considered is, Does the statute at all apply to the facts of this case? The place where the accident occurred was on a street in *Lafayette*. Could the company rightfully erect a fence at that place? The statute, it is true, allows the road to be securely fenced; but did the legislature intend to authorize railroad companies to enclose streets in a town against the use of the public? Such enclosure would be a nuisance; and a literal construction of the statute in that respect would involve an absurdity. " The reason and intention of the lawgiver will control the strict letter of the law, when the latter would lead to palpable injustice and contradiction." 1 Kent's Comm., p. 462. The company could not lawfully erect a fence at the place where the cow was injured; hence, the want of such fence can not be held to have been the cause of the accident.

This case is, therefore, not within the statute. It must be governed by common-law rule, and by that rule all the questions of negligence, wilful misconduct, and inevitable accident, so far as they may arise in the record, are open for consideration. 1 American Railroad Cases 210.—11 Barb. (N. Y.) R. 112.—13 *id.* 390.

But this reasoning leads to a conclusion adverse to the validity of the judgment, because, from the sum recovered, being double the amount found in damages, it is evident that the Court below, in trying the cause and rendering judgment, proceeded under the provisions of the act above quoted. We have seen that these provisions do not apply to the case before us. Hence, the decision must be considered erroneous.

The common law imposes on the owner of domestic animals the duty of keeping them on his own lands, or within enclosures, and he becomes a wrong-doer if any of them escape or stray off upon the lands of another. 3 Blacks. Comm. 209, 211.— *Wells* v. *Howell,* 19 Johns. R. 385. This, as a general rule, prevails in *Indiana,* and may be held applicable to the facts of this case. *Williams* v. *The New-Albany and Salem Railroad Co., supra.* The plaintiff might lawfully have driven his cow along the street and across the railroad track, but he had no right, under the circumstances, to permit her to go at large, wherever she pleased, unrestrained, especially when this permission was in the immediate vicinity of a railroad, in a city, where the company owning the road were not allowed to fence it.

Still, though the cow, when the injury occurred, may have been wrongfully on the track, if the damage resulted from gross negligence or wilful misconduct, on the part of the company's agents, in running the train, such being the proximate cause of the injury, the defendant would be liable. *Davies* v. *Mann,* 10 Mees. and Welsb. 546.— *Brownell* v. *Flagler,* 5 Hill 282.— *Inman* v. *Galt,* 7 B. Monroe 538.—16 Conn. R. 420. But on this point the evidence is too indefinite to produce any conclusion. It states "that the train was running faster than usual;" but its ordinary rate of speed is not shown; hence, the excess in running over what is usual can not be estimated. It may have been so slight as to admit of no weight in the consideration of the cause.

The law requires that a train of cars, in passing through a town, should be run with a greater degree of care, and, in consequence, at a less rate of speed than is generally observed in the movement of the train. But when the evidence says, "that the train was running faster than usual," we are not able to conclude whether it refers to the ordinary speed in passing through the city of *Lafayette,* or usually over the road.

This point in the evidence is, therefore, not susceptible of being weighed with any degree of accuracy, nor does it

May Term, 1855.

The Lafayette and Indianapolis Railroad Company v. Shriner.

May Term,     afford any inference upon which a decision of this case
1855.         can be rested with safety.

THE PRESI-        We are of opinion that a new trial should be granted.
DENT AND      *Per Curiam.*— The judgment is reversed with costs.
DIRECTORS
OF THE PERU   Cause remanded, &c.
AND INDIA-
NAPOLIS R. R.     *R. C. Gregory* and *R. Jones*, for the appellants.
COMPANY           *D. Mace* and *W. C. Wilson*, for the appellee.
v.
BRADSHAW.