## The Atlantic & St. Lawrence Railroad Company

### AND THE

## Grand Trunk Railway Company of Canada,

### Appellants

### From Decree of the Railroad Commissioners.

### Androscoggin.     Opinion November 7, 1905.

*Railroads.   Land for Station Purposes.   What " Station Purposes" Includes.—*
*Law and Fact.   Stat. 1883, c. 167, § 1.   R. S. (1883),*
*c. 18, § 29; 1903, c. 23, § 31.*

1. The land and right of way of railroad corporations used for "station purposes" within the meaning of sec. 29, chap. 18, R. S. 1883 or sec. 31, chap. 23, R. S. 1903, must be determined from the existing conditions in each case.

2. The Statutory designation, "for station purposes," includes such grounds at a station as are convenient, necessary and actually used by the railroad for approaches and exits for the public requiring passenger and freight transportation, for the location of depot buildings, warehouses, platforms, fixtures and apparatus for taking water and fuel supplies, lighting, heating, transmitting messages and giving signals, sidings for passing trains and shifting and storing cars and other property, switches, and space where passengers may get on and off trains, and goods loaded and unloaded.

3. When the facts are clear from undisputed evidence the question whether the place of a proposed crossing of a railroad by a town way or highway is land or right of way used for station purposes may be one of law, but it must generally be considered one of fact.

4. At the hearing in the Supreme Judicial Court on the appeal from the decision of the railroad commissioners evidence somewhat voluminous and conflicting was presented, and the justice refused to rule as matter of law that the *locus in quo* was land and right of way of the railroad corporation used for station purposes, and found otherwise upon the evidence as matter of fact.   *Held:*   that his ruling was correct and that his finding of facts could not be disturbed.

On exceptions by plaintiff.   Overruled.

Appeal from the decree of the Railroad Commissioners determining that a certain public highway within the city of Auburn, Androscoggin County, located by the County Commissioners of said

county over the land and right of way of the appellants, should cross the railroad track of the appellants by an underpass, and apportioning the expense of the construction and maintenance of the crossing.

At the hearing in the appellate court, the appellants requested the presiding Justice to rule as a matter of law that upon the facts presented by the evidence the decree of the Railroad Commissioners must be set aside and the appeal sustained. This ruling was refused but instead thereof the presiding Justice ruled that the aforesaid decree be affirmed with costs and the appeal be dismissed. To this ruling and refusal to rule, the appellants excepted.

All the material facts are fully stated in the opinion.

*C. A. & L. L. Hight,* for appellants.

*Newell & Skelton,* for appellees.

SITTING: EMERY, STROUT, POWERS, PEABODY, SPEAR, JJ.

PEABODY, J.    The proceedings in this case originated November 20, 1900, in the petition of various citizens of the City of Auburn in the County of Androscoggin to the County Commissioners asking for the location of a public highway within the City of Auburn over the land and right of way of the Atlantic & St. Lawrence Railroad Co. leased to the Grand Trunk Railway Co. of Canada. The County Commissioners after notice and hearing on the second day of April, 1901, filed with the clerk of the County Commissioners their report for the location of the highway.

On the 23rd day of March, 1903, the municipal officers of the City of Auburn petitioned the board of railroad commissioners to determine the manner and conditions of crossing the railway with said highway and apportion the expense of the crossing. Upon this petition as amended June 13th, 1904, after notice and hearing the railroad commissioners, on the 16th day of August, 1904, made a decree determining that said highway should cross the track by an underpass and apportioning the expense of construction and maintenance of the crossing. An appeal from this decree was duly taken and entered in the Supreme Judicial Court for the County of Androscoggin at the January term, A. D., 1905.

At the hearing on the appeal evidence was introduced showing the location of the intersecting tracks of the Maine Central Railroad and of the Grand Trunk Railway at Danville Junction and of the buildings, signal houses, freight houses, passenger depots, stand-pipes for water, car house and pump house; that the proposed crossing over the land and tracks of the railroad company was north of the depot and from fifty to seventy-five feet north of the northerly switch of the longest siding, and thirteen hundred and forty feet north of the center of the old county highway immediately south of the station, and eight hundred and twenty-three feet north of the northerly end of the station platform; and showing other conditions existing at and in the vicinity at the station and proposed crossing, at the time of the location of the highway in 1901 and subsequently thereto, materially bearing upon the question at issue. The evidence also showed the transfer of freight between the two railroads, that the greater part of the freight transfer business was done south of the old county highway near the junction of the two railroads, and that the cars going west delivered to the Grand Trunk Railway by the Maine Central Railroad were sometimes placed on the westerly siding north of the county highway; that in handling these cars and making them into trains it was frequently necessary to pass over the switch fifty to seventy-five feet south of the proposed crossing and to move them back and forth over the place of the proposed crossing, and for the train men in making up trains and in shunting cars on and off the sidings to work at the place where the crossing is located; that the long siding which runs up to within fifty or seventy-five feet of the proposed crossing was used principally in 1901 as a passing track for trains; that at the crossing and for some distance south is a fill from twenty to twenty-three feet in depth making it unsuitable for the public to go there either for the loading or unloading of freight or in connection with the passenger service; that on the main line and on the passing track trains were at times obliged to stop for water at the station and at times freight trains going east stopping for water extended over the point of the proposed crossing; that on the westerly side of the track was the pump house for the supply of water for the trains and the depot, since moved to a point north of

the crossing on the main line, that it was and is now necessary for coal cars to be hauled upon the main line opposite the pump house, and that the coal therefor was unloaded from the main line; that in 1901 the most westerly track was used for the storage of cars; that shunting was sometimes done on the track next to the main line but this track was principally used as a passing track; and that in 1902 the track next the main line was extended north and has since continued to be used as a passing track.

It was claimed by the appellants that, upon the case presented by the evidence, the proposed crossing was as matter of law through land or right of way of the railroad corporation used for station purposes; that there had been no adjudication by the railroad commissioners as required by statute on the question of public convenience and necessity for said crossing or way, and that therefore the laying out of said way by the county commissioners was illegal and void, and there was no legal foundation for the petition to the railroad commissioners to make the decree. They requested the court to rule as matter of law upon the facts presented by the evidence that the decree of the railroad commissioners must be set aside and the appeal sustained. This ruling the court refused to make, and instead thereof ruled that the decree of the railroad commissioners should be affirmed with costs and that the appeal should be dismissed; to which ruling and refusal to rule the appellants excepted and upon their exceptions the case comes before the law court.

The real question involved in the exceptions is whether the land and right of way of the railroad corporation at the point of the proposed crossing are land and right of way of a railroad corporation used for station purposes within the meaning of section 29, chapter 18, R. S. 1883 or section 31, chapter 23, R. S. 1903. This statute is as follows: "Sec. 31. No way shall be laid out through or across any land or right of way of any railroad corporation, used for station purposes, unless after notice and hearing the railroad commissioners adjudge that public convenience and necessity require it. When the tribunal having jurisdiction over the laying out of such way is satisfied, after hearing, that public convenience and necessity require such laying out, such proceedings shall be suspended and petition

filed by such tribunal with the railroad commissioners for their adjudication hereunder." This provision originated in section 1, chapter 167 of the laws of 1883.

A railroad exercises its franchises in the prosecution of its transportation business subject to the rights of the public to extend highways over its right of way. *Chicago and Alton R. R.* v. *City of Pontiac,* 169 Ill. 155. In this state its track may be crossed by ways laid out in the same manner as other ways, but the manner, condition and expense of the crossing are placed, by statute, under the jurisdiction of the railroad commissioners; and when the proposed location is over or across the right of way or land of any railroad corporation before it is finally established, there must be an adjudication by this tribunal that public convenience and necessity require it, the object being both to guard against the recognized dangers of railroad crossings and to secure the rights of the public when its convenience conflicts with the convenience of the railroad.

It is claimed by the appellants that the term right of way in the statute quoted is significant as implying a more extended use than that of land acquired for station purposes, but we think this construction would logically lead to a harmful limitation of the authority conferred by statute upon municipal officers and county commissioners for laying out town ways and highways. The intention of the legislature in employing both these words was simply to embrace all the property of the railroad constituting station grounds affected by the location of the way.

The legislative intent in the language "land or right of way of any railroad corporation used for station purposes" has not been judicially determined in this state. In the United States the words depot and station as used in connection with railroads are synonymous. *Goyeau* v. *Great Western R. Co.,* 25 Grant's Ch. U. C. 64. The term "station purposes" does not admit of any precise definition. Similar terms have been used in the statutes of other states relating to railroads and we may be aided in ascertaining the meaning of the words quoted in this case by analogous decisions. In the Western and Middle States where railroads have been required by statute to maintain fences on each side of their right of way to keep cattle

therefrom to diminish the hazard to passengers and loss to cattle owners, depot grounds have been either expressly excepted from this requirement or the courts in construing the statutes have determined that fencing out depot grounds was not required where the public was entitled to free access. *Jefferson, Madison and Ind. Railroad Co.* v. *Beatty*, 36 Ind. 15; *Evansville and Terre Haute Railroad Co.* v. *Willis*, 93 Ind. 507; *Morris* v. *St. Louis, Kansas City and Northern Railway Co.*, 58 Mo. 78; *Grosse* v. *Chicago and Northwestern Railway Co.*, 91 Wis. 482.

In *Davis* v. *The Burlington and Mo. River Railroad Co.*, 26 Iowa, 549, under a statute exempting railroads from the duty of fencing in places where the public require access, the term depot grounds was applied to a tract of five or six acres extending along either side of the roadway used for "loading and unloading freight and all purposes incident to the station including switches and sidetracks, elevators and warehouses." In *Smith* v. *C. M. & St. P. Railway Co.*, 60 Iowa, 512, it was held that a place a mile and a quarter from the depot buildings is not presumed to be station grounds, in the absence of proof showing it to be such. In Wisconsin in this class of cases the courts have given as the definition of "depot grounds" "the place where passengers get on and off trains and where goods are loaded and unloaded, and all grounds necessary and convenient and actually used for such purposes by the public and by the railroad company. This includes switching and making up of trains and the use of sidetracks for the storing of cars and the place where the public require open and free access to the road for the purposes of such business." *Grosse* v. *Chicago and Northwestern Railway Co.*, supra.

In Massachusetts the court by Judge Holmes under a statute providing for the taxing of land of railroad companies taken for station purposes, held that all the land described as land "for suitable station purposes and for tracks and yard room to be used in connection therewith" was included in the term "station purposes" and should be taxed. *Norwich & Worcester R. R. Co.*, 151 Mass. 69.

The definitions of station grounds in these decisions may be in their particular application narrower than should be given to the language "the right of way and land used for station purposes" under our

statute, but the reasoning upon which the decisions are based is relevant to the question under consideration. Station grounds or depot grounds at convenient points along the lines of railroads are selected embracing not only the land of the right of way but additional land of such extent as existing and prospective conditions seem to require, but it cannot be considered that the land originally appropriated should be arbitrarily held to limit railroads or the public in the application of statutory provisions. In every case in determining what are station grounds and depot grounds three conditions must concur. The grounds must be necessary, convenient and actually used by the railroads in the transaction of their business. They therefore include sufficient land for safe and convenient approaches and exits for the public requiring passenger and freight transportation, for the location of depot buildings, warehouses, platforms, fixtures and apparatus for taking water and fuel supplies, lighting, heating, transmission of messages and giving signals, sidings for passing trains, shifting and storing cars and other property, switches, and space where passengers may get on and off trains, and goods be loaded and unloaded. An important factor in determining what land may be necessary and convenient for station purposes is the amount and character of the railroad business done at a particular station. *McGrath* v. *Detroit Mack. & Marq. R. R. Co.*, 57 Mich. 555. Within narrow limits where the facts are clear upon undisputed evidence this question is properly one of law, but ordinarily it must be considered one of fact. *Grosse* v. *Chicago & Northwestern Railway Co.*, supra; *Plunkett* v. *The Minn., St. Marie and At. Railway Co.*, 79 Wis. 222; *Rhines* v. *Chicago and Northwestern Railway Co.*, 75 Iowa, 597. It is apparent from the authorities cited that in this case it is one of fact and not of law. The appellate court has rendered a decision based upon the evidence. It is a familiar and well settled rule that this court cannot disturb the findings of the presiding justice upon what might apparently be a preponderance of the evidence. A careful review of the testimony contained in the report fails to show that the findings of the appellate court are erroneous, and the rulings based thereon are clearly correct,

*Exceptions overruled.*