THE OHIO AND MISSISSIPPI RAILWAY CO. v. ROWLAND.

RAILROAD.—*Injury to Animal.—Fencing.*—In an action against a railroad company to recover the value of an animal killed by the cars of the defendant, the following instruction, given to the jury, applicable to the evidence, was correct: " A railroad company is not bound to build and maintain a fence at a point in a town or village, if by so doing it will obstruct or interfere with the free use of a public street in the town or village; and it is not bound or required to build and maintain a fence at a point that would obstruct a public highway, or where it will interfere in any way with the free use of such highway, whether such highway is in a town or village or in the country. Neither does the law require a railway company to build and maintain a fence at a point where by so doing it will interfere with the free use of a switch or side-track, constituting a part of the road; nor is such company bound to build or maintain a fence at a point on its road where it will interfere with the free use of a piece or parcel of ground kept and used by the company as a coal or wood-yard, nor when it will interfere with the free use of a yard or lot kept for the purpose of loading or unloading staves, lumber, timber, wood, or other kinds of freight shipped or to be shipped on the cars of the company. And when there is a mill or hay-press on or near a railroad track, if the maintaining of a fence at or near the mill or press would interfere with the free use of the same, then the company is not required to build or maintain a fence so as to interfere with the free use of the mill or press. And if there is a lot or yard used in connection with the mill or press, the company is not bound to build or maintain a fence at any point where the same will interfere with the free use of such lot or yard. But whenever a company can build and maintain a fence without interfering with the rights of the public, or with the free use of property belonging to private individuals, or of its own property, then it is bound to maintain a fence, whether it be in a town or village or in the country."

From the Jennings Circuit Court.

*T. Gazlay, W. D. Ward,* and *H. P. Buxton,* for appellant.

DOWNEY, J.—Suit by the appellee against the appellant, to recover the value of a mare and a horse killed by the locomotive and cars of the company. The ground of liability alleged is, that the railroad, at the place in question, could have been, but was not, fenced by the company. The point where the animals were killed was about one-fourth of a mile west of the town of Holton, in Ripley county, in which county the

action was commenced. By change of venue, the trial was had in Jennings county.

There was a demurrer to the complaint, which was overruled, and an answer of general denial filed.

The trial was by a jury, and there was a verdict for the plaintiff.

A motion for a new trial was made by the defendant, and overruled by the court, and there was final judgment.

The errors assigned are the overruling of the demurrer to the complaint, and the refusal to grant a new trial.

The first alleged error is not argued or urged by counsel. We do not see any objection to the complaint.

The motion for a new trial brings in question the sufficiency of the evidence. It is evident that the animals were killed by the cars, but it does not appear where they got on the road. The case is before us on the evidence upon the question·whether or not the company was required to fence the road at the point where the animals were found dead. Extending through the town of Holton, and for a short distance on each side, the company has a side-track. The railroad runs east and west, or nearly so, and the side-track is· on the south side of the main track. At or near the east end of the town, there is a public highway, called the Versailles road, which crosses the railroad at a sharp angle. The place where the horses were killed is west of this crossing, at a point where the highway is north of the railroad. The company has a depot west of the crossing, on the north side of the road.

James D. Clark testified: " Have been in appellant's employ about five years, and am well acquainted with the location of the ground and road-bed where the horses were killed; on the south side of the railroad, at that point, and extending a considerable distance both east and west, there is a side-track eighteen hundred and sixty-eight feet long, which runs through the town of Holton; west of the depot is a vacant lot, used for storing lumber and staves and for loading and unloading cars; west of this lot is an alley, running from the old Versailles road, north of the railroad, to a street south of the rail-

road; west of the alley, on the north side of the railroad, it is fenced; east of the alley, on the south side of the railroad, is a yard used for storing lumber, wood, and staves, and for loading and unloading the same upon the cars; immediately east of this yard is a small lot owned by Joseph Gray, on which he has a dwelling; immediately east of Gray's lot are the stock-yards and cattle-pens of the company, and east of these a warehouse used for storing and shipping freight; east of the warehouse, and thence to where the railroad crosses the old Versailles road, is a row of brick buildings fronting on the railroad; west of the alley, on the south side of the railroad, is a hay-press; it is about eighty feet south of the side-track, and about twenty feet west of the alley; west of the hay-press are some vacant lots, and west of them a saw-mill, about forty feet south of the side-track; and west of the mill are some vacant lots, used occasionally by the company for storing wood, lumber, and staves, and for loading and shipping the same on the company's cars; west of this, the side-track runs into the main track, west of which is a cattle-pit, west of which the railroad is fenced on both sides; there is a road running from the alley at the south end of the hay-press west to the saw-mill and to the lumber yard west of the mill; cars are loaded from the mill and also from the hay-press; about half-way from the hay-press to the mill is a culvert running under the railroad, a short distance west of which one of the animals was lying on the north side of the railroad, and a short distance west of it, on the south side and between the main track and side-track, the other was found dead; to fence the road at this point, a fence would have to be built along the south side of the railroad, from the alley, west past the hay-press, to the mill or the yard beyond, and joined at each end to the fence on the north side, by a cattle-pit crossing both the side-track and main track at each end; a cattle-guard is constructed by laying, on the top of stringers, four-inch scantling, so that one of the corners of the scantling stands up; it is so arranged to prevent animals from crossing the pit on them; cattle-pits on appellant's railroad are from

ten to twelve feet wide; the [side] track, between the alley and mill, is used by the company for switching in and out cars, in doing which it is necessary to couple and uncouple the same; this has to be done in all kinds of weather, and both day and night; the scantling, in wet, snowy, and icy weather, is slippery and troublesome to walk over; in coupling and uncoupling the cars, the brakeman is usually on the ground, and steps between the cars for that purpose; this is sometimes done while the cars are standing, at others while in motion; the distance from the alley to the saw-mill is about one hundred and fifty yards; I have been engaged in railroading about twenty-five years, and am familiar with railroad operations; I live at Holton, and am familiar with the business of the company at that point and the location of the tracks."

Cross-examined: "The side-track, from the alley west to a short distance beyond the saw-mill, is an embankment, starting at about two feet above the level at the hay-press, and sloping downward to about ten feet high at the culvert, and from that point upward to the level of the ground, a short distance west of the saw-mill; the platform from which cars are loaded at the hay-press is about five feet higher than the side-track; cars are loaded at the saw-mill from scaffolding raised above the track, which is removed when not needed for that purpose."

Thomas G. Van Meter testified: "Am agent of appellant at Holton, and have been about four years; am familiar with the location of railroad there, and adjoining grounds; the east end of the side-track commences east of the town of Holton, runs through it, and to a considerable distance west of said town; the space between the alley and the hay-press has been used for piling staves and lumber, and for loading the same on the cars; lumber has also been piled for shipping purposes between the hay-press and side-track; west of the mill are some lots used occasionally by the company for storing and shipping lumber, staves, and wood; the side-track west of the alley is used for loading and unloading cars, and switching; cars are left by trains and taken from the side-track at all places west of the alley; to fence the road at this point, a cattle-guard

would have to be constructed across the main and side-tracks just west of the alley, connecting with the fence at the north side of the road, and a fence would have to be built on the south side from the cattle-guard to the mill, and another cattle-guard constructed at that point across both tracks, connecting with the fence on the north side; cattle-guards, in snowy, wet, and icy weather, become slippery and difficult to walk on; the side-track between the mill and alley is used frequently for switching trains and putting in and taking out cars; they are left and taken from all points between the mill and alley; in putting in or taking out cars, the brakeman is compelled to couple and uncouple the cars; this has to be done at all hours of the day and night, and in all kinds of weather; the brakeman is usually on the ground, and is compelled to step between the cars, often while they are in motion, for that purpose."

Cross-examined : " The ground on the south side of the railroad, from the alley to the mill, is rolling, descending from there to a short distance east of the mill; the side-track is on an embankment the entire distance from the alley to the mill; it is about two feet high at the press, about ten feet at the culvert, and from three to four feet at the mill; there is a platform from the press to the side-track, about five feet higher than the side-track; a fence could be built under it and not interfere with loading from the press; scaffolds are built at the mill to load lumber on the cars, and they are built higher than any ordinary fence, and are removed when not required for loading."

The dead animals were found at the side of the road, east of the saw-mill and west of the hay-press.

The court gave the jury the following instruction on this branch of the case :

" 2. A railroad company is not bound to build and maintain a fence at a point in a town or village, if by so doing it will obstruct or interfere with the free use of a public street in the town or village; and it is not bound or required to build and

maintain a fence at a point that would obstruct a public highway, or where it will interfere in any way with the free use of such highway, whether such highway is in a town or village or in the country. Neither does the law require a railway company to build and maintain a fence at a point where by so doing it will interfere with the free use of a switch or side-track, constituting a part of the road; nor is such company bound to build or maintain a fence at a point on its road where it will interfere with the free use of a piece or parcel of ground kept and used by the company as a coal or wood-yard, nor when it will interfere with the free use of a yard or lot kept for the purpose of loading or unloading staves, lumber, timber, wood, or other kinds of freight shipped or to be shipped on the cars of the company. And when there is a mill or hay-press on or near a railroad track, if the maintaining of the fence at or near the mill or press would interfere with the free use of the same, then the company is not required to build or maintain a fence so as to interfere with the free use of the mill or press. And if there is a lot or yard used in connection with the mill or press, the company is not bound to build or maintain a fence at any point where the same will interfere with the free use of such lot or yard. But whenever a company can build and maintain a fence without interfering with the rights of the public, or with the free use of property belonging to private individuals, or of its own property, then it is bound to maintain a fence, whether it be in a town or village or in the country."

This instruction was correct. There was no evidence conflicting with that which we have set out. It appears to us that it is unreasonable to require a railroad company to fence the track of its road under such circumstances. The court should have set aside the verdict and granted a new trial.

The judgment is reversed, with costs, and the cause remanded for a new trial.