The Cincinnati, Richmond and Fort Wayne Railroad Company *v.* Wood.

---

No. 8643.

THE CINCINNATI, RICHMOND AND FORT WAYNE RAILROAD
COMPANY *v.* WOOD.

RAILROADS. — *Stock Killed by Lessee.* — *Evidence.* — *Variance.* — Complaint against a railroad company to recover the value of a mare of the plaintiff, alleged to have been killed by the defendant, by running its locomotives and cars upon the mare. The evidence disclosed that another railroad company, exclusively operating the road as lessee of the defendant, with its own locomotives and cars, committed the injury.

*Held*, that the variance was fatal.

SAME.—*Fencing.*—A railroad company is not required by the statute—R. S. 1881, section 4031—to fence its road at places where a fence would interfere with its free use of its property, or with the free use by individuals of their property, or with the rights of the public.

SAME.—*Evidence.*—*Conflict of Witnesses.*—Witnesses, mere casual observers, not engaged in business on a railroad, nor connected with it, nor engaged with those operating it, but pursuing other occupations, testified to a state of facts tending to show that, at a point in question, a fence would not interfere with its free use. Other witnesses, assisting in the business of the road at that point, so that they could not be mistaken, and having peculiar qualifications for knowing and judging of the matter, testified positively to a contrary state of facts, showing that a fence there would be a serious interference with the business of the road, and endanger employees of the road.

The Cincinnati, Richmond and Fort Wayne Railroad Company *v.* Wood.

*Held,* that this was not really a conflict of evidence, but that the class of witnesses first referred to should be understood as testifying only that, *so far as they had observed,* the facts were as stated by them.

From the Randolph Circuit Court.

*A. Zollars,* for appellant.

MORRIS, C.—The appellee sued the appellant before a justice of the peace and obtained judgment. The appellant appealed to the circuit court. The cause was submitted to the court for trial. The court found for the appellee, and, over a motion for a new trial, rendered judgment in his favor.

The errors assigned are, that the court erred in overruling the motion for a new trial, and that the complaint does not state facts sufficient to constitute a cause of action.

The complaint is in two paragraphs. The first states that on the 28th day of September, 1876, by its locomotives and cars, then and there used and run on the appellant's railroad track, which runs into the State of Indiana and through the county of Randolph, at a point on its road in said county where the same was not securely fenced, it not being a point on a public highway, but where said railroad might and should have been securely fenced, ran its locomotive and train of cars against and killed a mare of the appellee, of the value of $150, which mare had entered and passed upon said railroad at a point in said county, where said road was not securely fenced.

The second paragraph charges that the appellant carelessly and negligently ran its locomotive and cars against and killed the appellee's mare when on its road without fault or negligence on the part of the appellee.

The testimony in the case showed that a highway, running east and west on the section line, crossed the appellant's road, which runs nearly north and south, about 800 feet north of its depot, at Ridgeville in said county; that another highway, called the county road, crossed the appellant's road about 2157 feet north of said depot. On the west side of the main

track, there was a side track some nine feet west of the main track, extending 1555 feet north of the depot and 117 feet south of it. The switch stand is at the north end of the switch. From the switch stand to the crossing of the county road is 602 feet. On the west side of the track the appellant owns and occupies a strip of land, averaging in width some 75 feet, and extending from the county road to its depot. On this strip of land and about 900 feet south of the county road, the appellant built its stock pens, 132 feet in length and 42 feet in width. That portion of the strip of land on the west side of the road, lying between the stock pens and the depot, is used for loading and unloading freights. That portion of said strip lying between the stock pens and the county road crossing is used for logs, sawdust and by persons coming and going with teams in the transaction of business on said railroad.

Immediately south of the appellant's depot, its road is crossed by a public street. Some 600 feet south of the appellant's depot, its road is crossed by the Pan-Handle Railroad; on the east side of the appellant's road, and nearly opposite its depot, there is a mill and other buildings, owned by other parties; the owner of the mill has and owns a side track, extending north some distance from the mill, and connecting with appellant's track; on the east side of the railroad, the appellee owns a field, the fence on the west side of which extends from a point about 200 feet south of the crossing of the appellant's road by the county road, southward to the section line road; from the north end of appellee's field to the county road crossing—200 feet—the appellant's road is not fenced. The appellee's mare was in the field east of the railroad; she got out of the field and on to the appellant's road the day she was killed. So far, there is no conflict in the testimony.

The appellee contends that his mare got out of his field, passed upon the railroad north of the field and south of the county road, where the railroad was not fenced, and that she went south upon the appellant's right of way, and got upon

the track just north of the switch stand, and was there struck by the appellant's locomotive and killed, and carried by the cow-catcher some thirty feet south of the switch stand. The appellant insists that the fence on the west side of the appellee's field was out of repair; that the mare got out of the field opposite the switch stand, and came upon the road south of it and was there killed. Upon these points the testimony is conflicting. It was for the jury to determine these questions, and as the testimony in relation to them is conflicting, their decision can not be disturbed on the ground that, as to them, it is not sustained by the evidence.

The appellant further contends that it was not its duty to fence any part of its road between the point where it is crossed by the county road and its depot; that to fence that portion of its road would seriously interfere with the transaction of its business. The appellee has not filed a brief. We do not know what his views upon this question may be.

The testimony upon this question is not, seemingly, in complete harmony, though we think it can hardly be said to be conflicting.

Some of the witnesses on the part of the appellee testified that no business was transacted by the appellant on its road north of the switch stand to the county road crossing—a distance of 602 feet—except to run its locomotives and trains over its main track; that cars were neither loaded nor unloaded north of the switch stand; that the right of way was not used north of the switch stand, by those doing business on the road for any purpose, and that there was, therefore, no reason why the road should not have been securely fenced where the mare got upon it. But the witnesses thus testifying for the appellee were not in any way engaged in business on the road or connected with it or with those managing its business. They were engaged in other occupations, and were, at most, but casual observers of the road, its use and the business transacted upon it. They should, we think, be understood as testifying that, so far as they had observed or noticed,

the ground north of the switch stand or stock pens, had not been used by those in control of the railroad. So understood, their testimony is not in conflict with the testimony introduced by the appellant.

A number of witnesses connected with the road, and managing its business, loading and unloading freight, making up trains, coupling and uncoupling cars, with ample opportunities and peculiarly qualified to judge as to the extent of side tracks, and the quantity of ground required for the convenient transaction of the business of the road, testified that, in their judgments, the road between the county road crossing and the depot could not be fenced without seriously interfering with the transaction of its business. They testified that the ground belonging to the company north of the switch stand, on the west side of road, was used by persons doing business on the road; that sawdust was deposited on this ground, and from it loaded on the cars; that teams, in carrying freight to and from the road, used it. They also testified that the company had not sufficient side tracks at Ridgeville; side tracks could not be constructed south of the depot. They also testified that, for the want of sufficient side tracks, the company had to use the Y connecting their road with the Pan Handle road, and the private track leading to the mill; that, for the same reason, they are sometimes obliged to leave cars six miles distant from Ridgeville; that it often happened that when the side track was full of cars, they had to couple and uncouple cars on the main track north of the switch stand; that at such times the employees, operating the train, got off of it at the county road crossing; that if cattle guards were placed there, as they would have to be to prevent animals from getting on the track, it would not only interfere with the coupling and uncoupling of cars, but greatly increase the attending danger.

We think that it would be unreasonable to require the appellant to fence its road between the crossing of the county road and its depot; that it could not, upon the testimony in

the case, be required to do so, without unjustly interfering with the proper and legitimate use of its property. This case, in its facts, seems to fall within the decision of the case of *Ohio, etc., R. W. Co.* v. *Rowland,* 50 Ind. 349. In that case it was held that the following instruction should have been given:

"Neither does the law require a railway company to build and maintain a fence at a point where by so doing it will interfere with the free use of a switch or side track constituting a part of the road; nor is such company bound to build or maintain a fence at a point on its road where it will interfere with the free use of a piece or parcel of ground kept and used by the company as a coal or wood yard, nor when it will interfere with the free use of a yard or lot kept for the purpose of loading or unloading staves, lumber, timber, wood, or other kinds of freight shipped or to be shipped on the cars of the company. And when there is a mill or hay press on or near a railroad track, if the maintaining of the fence at or near the mill or press would interfere with the free use of the same, then the company is not required to build or maintain the fence so as to interfere with the free use of the mill or press. And if there is a lot or yard used in connection with the mill or press, the company is not bound to build or maintain a fence at any point where the same will interfere with the free use of such lot or yard. But whenever a company can build and maintain a fence without interfering with the rights of the public, or with the free use of property belonging to private individuals, or of its own property, then it is bound to maintain a fence, whether it be in a town or village or in the country."

In the case of *Indianapolis, etc., R. R. Co.* v. *Christy,* 43 Ind. 143, it was held that railroad companies were not required to fence their tracks at stations and sidings where freight or passengers are received or discharged, and that they were not liable to pay for cattle that might wander upon the track at such places, if killed by the company without negli-

gence on its part. *Indianapolis, etc., R. R. Co.* v. *Oestel*, 20 Ind. 231; *Jeffersonville, etc., R. R. Co.* v. *Beatty*, 36 Ind. 15; *Wabash, etc., R. W. Co.* v. *Forshee*, 77 Ind. 158; *Indianapolis, etc., R. W. Co.* v. *Crandall*, 58 Ind. 365.

But the first paragraph of the complaint charges that the appellant, the Cincinnati, Richmond and Fort Wayne R. R. Co., ran its locomotive and cars against and killed the plaintiff's mare. It is not averred that the Grand Rapids and Indiana R. R. Co. was running the appellant's road under a lease from it or otherwise. No cause of action is, therefore, stated against the Grand Rapids and Indiana R. R. Co. It is not mentined in the complaint. *Cincinnati, etc., R. R. Co.* v. *Paskins*, 36 Ind. 380. The proof shows that the locomotive and cars of the Grand Rapids and Indiana R. R. Co. were, by its agents, run against the appellee's mare, causing her death. This was all the testimony there was upon the point. Can it be said that evidence which showed that the mare was killed by a locomotive and cars belonging to the Grand Rapids and Indiana R. R. Co., run and owned by it, tended in any degree to prove the averment in the complaint that the mare was killed by the locomotive and cars of the appellant, run by it? We think the evidence had no tendency to prove the allegation. *Cincinnati, etc., R. R. Co.* v. *Paskins, supra.*

It may be that the appellant would be liable for the acts of the G. R. & I. R. R. Co., but to render it liable, the facts which create the liability should be stated and proved. So, too, it may be that the G. R. & I. R. R. Co. could be made liable in the name of the appellant for killing the appellee's mare, but the facts upon which the liability rests must be stated and proved before a recovery can be obtained. We think the proof did not sustain the finding of the court, if based upon the first paragraph of the complaint.

Nor was the appellee entitled to recover upon the second paragraph of the complaint. The evidence of the appellee showed that the appellant had leased its road to the Grand

Rapids and Indiana R. R. Co. in 1871, for the term of ninety-nine years. The uncontroverted testimony in the case shows that the latter company was, at the time the mare was killed, in possession of the road, running and operating the same. The mare was killed by the locomotive and cars of the G. R. & I. R. R. Co., run and operated by its employees. Upon the evidence, it is very clear that the mare was not killed as charged by the appellee. It is equally clear that the appellant was not liable on the second paragraph of the complaint, for the acts of the G. R. & I. R. R. Co. The evidence did not tend, in the slightest degree, to sustain a finding against the appellant on the second paragraph of the complaint. *Cincinnati, etc., R. R. Co.* v. *Bartlett*, 58 Ind. 572. The motion for a new trial should have been sustained.

PER CURIAM.—The judgment below is reversed, upon the foregoing opinion, at the costs of the appellee.