IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, MAY TERM, 1872, IN THE FIFTY-SIXTH YEAR
OF THE STATE.

————————◆————————

THE TOLEDO, WABASH, AND WESTERN RAILWAY COMPANY
*v.* HOWELL.

RAILWAY.—*Cattle.*—*Fence.*—If cattle come upon a railroad where there should
be a sufficient fence, but there is not, and wander upon the road to a point
where the road is not fenced, and cannot lawfully be fenced, and are there
injured, the company is liable, and an answer to an action for such injury,
under the statute, must show that they did not thus enter upon the road.

SAME.—*City.*—A railroad company is not excused from fencing through a large
block of ground, not intersected with streets and alleys, simply because the
same is within the limits of a city.

APPEAL from the Tippecanoe Common Pleas.

PETTIT, J.—This was a suit by the appellee against the
appellant to recover the value of stock killed by the loco-
motive and cars of the appellant, where the road was not
fenced. The complaint was in the usual and proper form.
The answer was in two paragraphs; first, general denial;
second, "that the stock, alleged to have been injured, came
in contact with the locomotive at a point on the line of said
railway within the corporate limits of the city of Lafayette,
where the company's roadway passes between and from

Fourth to Fifth streets, where it was not competent or lawful for said company to fence said railway." There was a demurrer, for want of sufficient facts, sustained to the second paragraph of the answer. There was no error in sustaining this demurrer. The answer does not state that where the stock came on to the road it was not competent or lawful to fence, but that where it came in contact with the locomotive, it was not competent or lawful to fence. If stock comes on to a road where it is the duty to fence, and wanders to, and is killed at, a place where it is not the duty to fence, still the company is liable. Pleadings must state facts, not conclusions of law. The appellant was not denied the right to introduce any evidence she desired on the competency or legality of fencing at the place where the stock got on, or was killed by, the road.

The evidence was this in the case:

"Howell, the plaintiff, sworn, testified: Last January a year (1869), I owned a mule and a mare; the mule was worth one hundred and seventy-five dollars, and the mare one hundred and twenty-five dollars; they were found by me one morning in January, 1869, crippled—their legs broken; I found the one about three hundred yards from the track with the hind legs broken, and the other about half that distance from the track, and a leg broken; I saw blood and hair on the bank, and marks as of animals thrown down; this was at or near the bridge, about half way on the railway track where it passes from Fourth to Fifth streets, on the railroad in Lafayette; there was no regular fence on the north side of the railroad; the plat of the city (here introduced) at that point shows where the fences were, and how they were situated; it is a correct representation of the lots, streets, and alleys; part of the ground on the north side is platted into lots, etc.; part of the ground between Fourth and Fifth streets is not; the angle of the lot numbered 11, which lies north of the railroad, is not sub-divided into lots, and could be fenced; I mean that triangle north of the railroad, part of No. 11; I think the horses got on the track between Fifth and Sixth

streets; the space between the New Albany road and the Wabash road is not fenced; it is about sixty yards on the upper end and about twenty on the south end; there is a steep bank between the two roads, or rather the Wabash road is laid on a natural bank several feet higher than the other, which might make it difficult to fence; we killed the mule and mare, because they were incurable; the broken legs were hanging by the skin.

· "Cross Examined.—I kept my horses up; the last I saw of them was the night before the accident; I mean the last: before the injury; my stable and house are on the west half of lot sixty-three, between Fourth and Fifth streets, and Romeg and Fountain streets; they were tied in the stable; they did not get out through the regular stable door on to the railroad or on any street leading to the railroad; the mule was tied in the regular manger; the mare was tied near the door leading into the yard; when loose she had no difficulty in getting into the yard; she had broken her halter; so had the mule; the mule, after he had broken loose, jumped over the manger into where the mare had been tied, and thus got out by the same door into the yard; they must then have jumped over the yard fence, and got out that way to the alley, and thence to the railroad; I knew the railroad was in daily operation; I lived close by as you see from the plat (lot sixty-three, *supra*); I did not see the injury done; I did not know of it till next morning; I think that triangle north of the railroad could be fenced; but that is not the place where the mule and mare got on the track; it was here, I think, though I don't know, between Fifth and Sixth streets, as already described; the bridge I spoke of is open; that is, it is like all railroad bridges generally, nothing between the timbers, no floor on which horses or wagons could cross; the mule and mare were worth in the market the prices I have put them at."

Howell, sworn, concurred with his brother as to the value of the horses (mule and mare) and the condition in which. they were found on the morning of the injury.

The part of the plat of Lafayette introduced in evidence was the part between Fourth and Sixth streets, along and on each side and contiguous to the railroad, with all the lots, streets, alleys, and other sub-divisions, as they appear on said part of the plat of Lafayette, and which is here embodied as part of the evidence in this cause.

We cannot put the plat into this opinion, or fully and correctly present it to the understanding by words, as to where the stock got on to the road or were killed by locomotive. There are two places pointed out, one a block of ground large enough to make ten ordinary lots in the city of fifty feet front each, through which the railroad runs diagonally, with no street or alley running through it; the other is a long strip of ground between appellant's road and the Louisville, New Albany, and Chicago Railroad, sixty yards wide at one end and twenty at the other. It is manifest the animals got on to the road at one or the other of these places, both of which might have been, but were not, securely fenced. The last piece had neither street nor alley running through it.

The counsel for the appellant admits in his brief that the only real question in this case is, whether a railroad company is bound to fence within the corporate limits of a city; and he is seemingly very earnest in his argument that the company is not so bound.

The counsel was formerly an honored judge of this court. We all know him well, and hold him in high esteem for his personal worth, as well as for his great learning and ability. We often, with full approbation, cite his opinions delivered in this court as a judge, but we cannot concur in all of his views expressed as counsel. Lord COKE once said, "It is the duty of the judge to decide what is the very law, while it is the privilege of the advocate to contend for what seemeth to be the law."

The statute makes no exceptions as to the place where stock shall be killed, as to liability, if the road is not securely fenced; but this court has interpolated exceptions,

such as the crossings of highways, streets, and alleys, in towns and cities, and at mills, where the public have a right and a necessity to go undisturbed; but this court has not made, and ought not to make, under the statute, an exception of large blocks of ground merely because they are situated within the limits of a city. There is no reason why such lands not in a city must be fenced, that does not apply with equal, if not greater, force when they are within the limits of a city. We cite *The Bellefontaine Railway Company* v. *Reed,* 33 Ind. 476; *The Indianapolis and Cincinnati Railroad Company* v. *Parker,* 29 Ind. 471; *The Toledo, Wabash, and Western Railway Company* v. *Cary,* 37 Ind. 172. This case was tried by the court, finding for plaintiff, motion for new trial overruled, and exception taken. The court below committed no error.

The judgment is affirmed, at the costs of the appellant.*

*W. Z. Stuart,* for appellant.

*W. C. Wilson,* for appellee.

*Petition for a rehearing overruled.