No. 10,968.

## EVANSVILLE AND TERRE HAUTE RAILROAD COMPANY *v.* WILLIS ET AL.

RAILROAD.—*Fencing.—Stock Killed.*—A railroad company is not required by the statute, section 4031, R. S. 1881, to fence its road at places where such fence interferes with its own rights in operating its road or transacting its business, nor where the rights of the public in travelling or

doing business with the company are interfered with, or where such fencing would imperil the lives of its employees, and no recovery can be had under the statute for stock killed by its locomotives or cars at such places on the line of its road.

From the Sullivan Circuit Court.

*A. Iglehart, J. E. Iglehart* and *E. Taylor,* for appellant.

*J. B. Patton, J. T. Hays, J. T. Beasley* and *H. J. Hays,* for appellees.

HAMMOND, J.—This was an action by the appellees against the appellant to recover damages for killing a mule by the appellant's locomotive and cars, between the switch at Carlisle station and a bridge in Sullivan county, where the railroad was not securely fenced.

The appellant answered by a general denial, and also by a special paragraph, alleging that the injury complained of occurred near the town of Carlisle, at or near a point on the railroad track where it connects with a switch, used by the appellant for switching cars and trains of cars from and to the main track of the railroad; that it would be inconvenient and impracticable to fence the railroad at said place, or to build cattle-guards there, for the reason that if such fence or cattle-guards were there, they would interfere with the free use and enjoyment of said railroad, and switching privileges therewith connected, by the appellant, its servants, employees and the public dealing with it, and that the same would greatly endanger the lives of said employees operating trains of cars on said road, and in switching the same from said main track to and from said switch.

The appellees replied in denial of the special paragraph of the answer. There was a trial by jury; verdict for appellees; motion for a new trial overruled, and exceptions; and judgment on the verdict.

The evidence in the case establishes the following facts: At and north of the town of Carlisle, the appellant's railroad runs north and south. There are at that station two side tracks, one on either side of the main track, each con-

Evansville and Terre Haute Railroad Company *v.* Willis *et al.*

necting with the main track at a switch target north of the depot. The depot is situated between the main track and the west side track. West of, and near the west side track, between the depot and the north switch target, 150 feet south of said target, there is a steam flouring-mill, which receives and ships grain and flour on the appellant's cars. There is a wagon road from the mill to the side track, which is used by teams in loading and unloading at the mill and on and off cars standing on the side track. Each of the side tracks is used by the appellant in transacting its regular business, and by the public in loading and unloading freight. Seven hundred and fifty feet north of the switch target referred to there is a public highway running nearly east and west, and passing under a bridge crossed by the railroad at that point. The railroad embankment next to and south of the bridge is from fifteen to eighteen feet high, and gradually lowers to eight feet in height at the switch. The sides of the embankment are steep, but for a short distance near the switch a man can walk along the side thereof. The company's right of way is eighty feet wide, forty feet on either side of the center of the railroad track. Approaching the switch from the north the road is on a steep up-grade, which continues south of the switch. An average freight train on the appellant's road extends from the switch across the bridge over the highway, and some distance north of it.

The appellees' mule escaped from their field east of the railroad and north of the highway, and from said highway entered the appellant's right of way and went south. It entered upon the railroad track about 150 feet north of the switch, and thence went north on the track to a point near the south end of the bridge, where it was killed by the locomotive of a freight train at 11 o'clock at night, when it was very dark.

The evidence shows beyond question that the railroad could not be fenced along the side tracks without materially interfering with the business of the company, and also with the

convenience of the public in transacting business with the railroad. But the only question in the case is whether the road could properly have been fenced between the switch and the bridge. To have securely fenced it at that place, it would have required a cattle-guard near the south end of the bridge and another at or near the switch. The evidence, we think, shows without conflict that a cattle-guard near the switch would greatly have endangered the lives of the appellant's employees in operating its trains. The up-grade approaching the switch from the north made it necessary to keep the train in motion, so that the brakeman who threw the switch had to get off the train a considerable distance from the switch before reaching it. The danger to the person thus going in advance of the train arising from a cattle-pit and cattle-guard to be passed over in the night, or in ice and snow, can readily be seen.

The facts about which there was no dispute show, we think, that cattle-guards between the switch and the bridge would be hazardous to the safety of the railroad employees in switching cars and trains. Under the circumstances, the railroad was, in our opinion, excused from fencing at the place in question. It is well settled law that a railroad company is not required to fence its road where such fence interferes with its own rights in operating its road or transacting its business, nor where the rights of the public in travelling or doing business with the company are interfered with. *Indianapolis, etc., R. R. Co.* v. *Oestel*, 20 Ind. 231; *Jeffersonville, etc., R. R. Co.* v. *Beatty*, 36 Ind. 15; *Indianapolis, etc., R. R. Co.* v. *Christy*, 43 Ind. 143; *Ohio, etc., R. W. Co.* v. *Rowland*, 50 Ind. 349; *Indianapolis, etc., R. W. Co.* v. *Crandall*, 58 Ind. 365; *Cincinnati, etc., R. R. Co.* v. *Wood*, 82 Ind. 593; *Pittsburgh, etc., R. W. Co.* v. *Bowyer*, 45 Ind. 496; *Indianapolis, etc., R. R. Co.* v. *Kinney*, 8 Ind. 402.

If a railroad company is not required to fence its road where the rights of the company in running its trains or transacting its business are thereby infringed, there is greater

reason for holding that it should not be required to fence its road where the lives and limbs of its employees would be thereby endangered.

It is suggested by the learned counsel for the appellees that the grade of the appellant's road at the place in question could be reduced so as to allow trains to stop as they approach the side tracks from the north, thereby giving the employees ample time, without danger, to go forward and do the switching. There is no proof that the reduction of such grade is practicable, and we must presume that, as established, it is as light as the topography of the country through which the railroad passes will admit of its being made. We express no opinion whether, for the sake of fencing, a railroad should in any case be held responsible for not changing the grade of its road.

The appellant's motion for a new trial should have been sustained.

Judgment reversed, at appellees' costs, with instructions to the court below to sustain the appellant's motion for a new trial, and for further proceedings.

Filed Feb. 22, 1884.