Filed April 16, 1884.

---

No. 10,129.

THE LAKE ERIE AND WESTERN RAILWAY COMPANY *v.* KNEADLE.

RAILROAD.— *Killing Stock.—Fencing.— Burden of Proof.*—The liability of railroad companies for cattle killed, created by statute for failure to fence, depends upon whether they are bound to fence at the place where the cattle enter upon the track. The *onus* of proving that there was no sufficient fence at that place is on the plaintiff, and then the defendant must show a sufficient excuse therefor.

SAME.—A railroad company is not bound to place fences or cattle-guards where they would interfere with the transaction of its business or endanger its servants.

From the Benton Circuit Court.

*H. W. Chase, F. S. Chase* and *F. W. Chase,* for appellant. *C. E. Lake* and *J. S. McMillin,* for appellee.

ELLIOTT, J.—The appellant prosecutes this appeal from a judgment rendered against it for the value of two cows killed by one of its locomotives.

Our decisions firmly settle the law that the liability of railroad companies for killing cattle depends upon whether they were bound, under the statute, to fence at the place where the cattle entered upon the track. It is not material whether the place where the cattle were killed was or was not one which the company was required to fence, but the material inquiry always is whether the cattle entered at a place where it was the statutory duty of the company to securely fence. *Louisville, etc., R. W. Co.* v. *Overman,* 88 Ind. 115; *Wabash, etc., R. W. Co.* v. *Forshee,* 77 Ind. 158; *Jeffersonville, etc., R. R. Co.* v. *Lyon,* 72 Ind. 107; *Toledo, etc., R. W. Co.* v. *Howell,* 38 Ind. 447.

We are, therefore, to examine the evidence in this case, not with a view of ascertaining whether it was the duty of the appellant to fence at the place where the appellee's cows were killed, but whether it was the company's duty to fence at the place where the cattle entered upon the track.

The evidence shows that the animals were killed on the main track of the company, at a station called Talbot, and immediately opposite a large grain elevator. It also appears that at this point there was a spur, or side-track, used by the company for freight cars and for receiving and unloading grain, lumber, and other freight. The testimony does not directly show at what point the cows came upon the track, but it does clearly show that on the south side of the tracks there was a secure fence, and that on the north side there was a steep embankment down which cows would not go. The inference from the evidence is that appellee's cows entered upon the track at a place where it would have interfered with the business of the company in handling cars or in receiving and discharging freight, or else at a place where it would have endangered the lives of persons in the employment of the company, to have placed cattle-guards.

The plaintiff in such an action as this has the burden of showing that the animals entered at a place where the railroad was not fenced, and it is doubtful whether it can be said

that there is any evidence showing where the cows did enter; but yielding the appellee the benefit of the doubt, and inferring in his favor that they did enter at a place where the track was not fenced, we are bound to also infer that the place where they entered was a place where the company was under no legal obligation to fence.

It is true that when the plaintiff proves that the place was not fenced, the burden is devolved upon the defendant of showing an excuse for not fencing. In this case we think the evidence does show that the side of the spur track could not have been fenced without injury to the business of the company, and it is established by many cases that railroad companies are not bound to fence at such places. The evidence brings the case fully within the decision in *Cincinnati, etc., R. R. Co.* v. *Wood*, 82 Ind. 593, and cases there cited.

A cattle-guard could not have been placed at the crossing of the street called West street without endangering the lives of persons engaged in managing the freight trains of the company. The adjudged cases declare that a railroad company is liable to its servants if it negligently or wrongfully makes unsafe and dangerous places in its tracks. Its duty with respect to its track is much the same as that to which it is held respecting its machinery. *Allen* v. *Burlington, etc., R. R. Co.*, 5 Am. & Eng. R. R. Cas. 620; *Snow* v. *Housatonic R. R. Co.*, 8 Allen, 441; *Lewis* v. *St. Louis, etc., R. R. Co.*, 59 Mo. 495 (21 Am. R. 385); *Plank* v. *N. Y., etc., R. R. Co.*, 60 N. Y. 607. In the recent case of *Evansville, etc., R. R. Co.* v. *Willis*, 93 Ind. 507, we held that a railroad company was not bound to place cattle-guards where they would endanger the lives of their servants. It seems to us that any other conclusion would be radically wrong, for it would place the company in the dilemma of becoming liable to its servants if it constructed cattle-pits at places where they would be dangerous, and liable to cattle-owners if it neglected to provide such guards.

The jury found, in the answers to interrogatories, against

the appellee on the question of the duty of the appellant to fence, and took, substantially, the same view of the evidence that we have done, so that the case really turns upon the question whether a cattle-pit at the intersection of West street would have been dangerous. The answer of the jury to the question as to whether the pit would have made the track dangerous is in these words, " Not naturally dangerous," and this, it is manifest, is an equivocal answer, for the question, in form, properly admitted of a simple affirmative or negative answer. We, therefore, feel less delicacy in setting aside the verdict than we should ·have done had there been a direct finding upon this point. It is clear to us from the evidence that a new trial should be awarded.

Judgment reversed.

HAMMOND, J., did not take any part in the decision of this case.

