The Indiana, Bloomington and Western Railway Company *v.* Quick.

The trial court erred in refusing to admit the tax deeds in evidence.

Judgment reversed.

Filed Jan. 26, 1887.

————————◆————————

No. 12,374.

109  295
142  382

## THE INDIANA, BLOOMINGTON AND WESTERN RAILWAY COMPANY *v.* QUICK.

RAILROAD.— *Liability for Animals Killed.* — *Fence.* — *Station Grounds and Sidings.*—A railroad company is not required to fence its track at stations and sidings where freight or passengers are received or discharged, and are not liable to pay for animals which enter upon the track at such places and are killed, without negligence on the part of the company.

SAME.—The material question in such cases is the condition of the road at the place where the animals enter upon the track, and not at the place where they are killed.

PRACTICE.—*Short-Hand Reporter.*—*Long-Hand Report of Evidence.*—*Exhibits.* —*Original Papers, When Part of Record.*—*Bill of Exceptions.* — *Supreme Court.*—Original papers read in evidence, and accompanying and identified by the long-hand report of the evidence taken down in short-hand by the official reporter, will be treated in the Supreme Court as constituting a part of such report, and as properly in the record when embraced in a bill of exceptions.

TRIAL.—*Erroneous Theory.*—*Supreme Court.*—*Reversal of Judgment.*—The trial of a cause upon an erroneous theory is a mis-trial, authorizing a reversal of the judgment, except where a just conclusion has been reached upon the merits.

From the Clinton Circuit Court.

*C. W. Fairbanks* and *W. R. Moore,* for appellant.

*G. W. Paul, J. E. Humphries* and *W. M. Reeves,* for appellee.

NIBLACK, J.—This action was commenced in the Montgomery Circuit Court, and by a change of venue taken to the Clinton Circuit Court, where it was tried.

The complaint charged, that the Indiana, Bloomington and Western Railway Company, on the 21st day of July, 1883, operated a line of railway between Indianapolis, in this State, and the city of Bloomington, in the State of Illinois, running through the county of Montgomery in the first named State; that on that day, and in said county of Montgomery, the railway company ran its locomotive and train of cars upon five horses belonging to the plaintiff Quick, and killed said horses, which were of the aggregate value of one thousand dollars; that at the place at which the horses entered upon said railway line, it was not fenced.

The railway company answered in three paragraphs:

*First.* In denial.

*Second.* That the horses mentioned in the complaint entered upon the railway track, and were killed, at a point where said track could not be fenced without injury and great inconvenience to the public, that is to say, at a point where said track crosses a highway, and where the fencing of such track would unlawfully obstruct said highway.

*Third.* That said horses entered upon the railway track at a point where the same could not be lawfully fenced in, that is to say, at the railway company's depot and station grounds at Wesley station in said county of Montgomery, said depot and station grounds being used to receive and discharge freight and passengers; that a fence at said point would greatly injure and embarrass the railway company and the travelling and shipping public, in the transaction of railway business at said station.

Issue, trial by a jury, verdict in favor of Quick, a new trial refused, and judgment on the verdict.

It was shown at the trial that Wesley station is a flag station upon the railway in question, on the west side of a public highway running from north to south through Montgomery county; that the passenger depot consists of a small building and a platform over sixty feet long, situate on the south side of the main track, and immediately west of the high-

way; that at a point near six hundred feet west of the high-way a switch diverges from the south side of the main track, and runs up to within a short distance of the highway, at a point south of the depot, and about sixty-four feet distant from the main track; that there are cattle-pens contiguous to the switch, used for shipping cattle and other animals; that the open area between the switch and the main track in the vicinity of the depot is used in the ,reception and discharge of freight, and in connection with the general business of the railway company at that place; that there is a fence on the north side of the main track, extending up to the high-way; that there is also a fence on the south side of the switch, commencing at the highway and thence running west to and alongside of the main track, but that there is no fence on the west side of the highway to prevent animals from entering either upon the switch or main track, or into the open area between the two side fences; that there is a cattle-pit and cross-fences a short distance west of the terminus of the switch, and a trestle-bridge of considerable length several hundred feet further west; that, on the 21st day of July, 1883, Quick, who lived about one mile and a quarter north of Wesley station, was the owner of five valuable horses, which he had on pasture, in a lot near his house; that in the early part of that night a storm swept over the farm on which Quick resided, and blew down a part of the fence around the lot in which the horses were inclosed; that the horses there-upon passed out of the lot through the break in the fence thus made, and went out upon the highway, to which refer-ence has been made, in the direction of Wesley station; that on reaching the railway the horses turned west, and went some distance down the open space between the main track and the north line of fence running parallel with it; that soon after a freight train approached Wesley station from the east; that after the train passed the station the horses ran on to the track in front of it, and one of them, falling into the cattle-pit, was run upon and killed; that the remaining

four horses leaped over the cattle-pit and continued on the track until they ran into the trestle-bridge, where they were also run upon and killed.

There was some conflict in the evidence as to the condition of the cattle-pit at the time one of the horses fell into it as stated, and as to some other kindred affairs, but as there was no question of negligence involved in the issues, which the jury were empanelled to try, such conflicting evidence had no reference to any material matter now before us.

The controlling question at the trial was, had the railway company wrongfully failed to fence in its track at the point at which the horses entered upon its right of way?

Wood, in his work on Railway Law, at page 1555, states the general rule to be that railway companies are not required to fence their depot grounds, as such a fence would be a great inconvenience to the companies as well as to the public, and that where cattle or other domestic animals, straying upon the highway, enter upon the track of a railway company over such grounds, or at any other point where the company is not obliged to erect a fence, such company can only be held liable for injuries wilfully inflicted. See, also, pages 1543 and 1564.

In this State it has been held that railway companies are not required to fence their tracks at stations and sidings where freight or passengers are received or discharged, and are not liable to pay for cattle, or other animals, which may wander upon the track at such places and be killed, without negligence on the part of such companies. This holding has been, and still is, upon the theory that when a railway track is as securely fenced as the nature of its business and public convenience will permit, it is "securely fenced in" within the meaning of section 4031, R. S. 1881, and is either expressly, or in principle, sustained by a long line of decided cases. *Indianapolis, etc., R. R. Co.* v. *Oestel*, 20 Ind. 231; *Jeffersonville, etc., R. R. Co.* v. *Beatty*, 36 Ind. 15; *Indianapolis, etc., R. R. Co.* v. *Christy*, 43 Ind. 143; *Pittsburgh, etc., R.*

The Indiana, Bloomington and Western Railway Company *v.* Quick.

*W. Co.* v. *Bowyer*, 45 Ind. 496 ; *Ohio, etc., R. W. Co.* v. *Row-land*, 50 Ind. 349 ; *Indianapolis, etc., R. W. Co.* v. *Crandall*, 58 Ind. 365 ; *Cincinnati, etc., R. R. Co.* v. *Wood*, 82 Ind. 593 ; *Fort Wayne, etc., R. R. Co.* v. *Herbold*, 99 Ind. 91.

The doctrine, which the foregoing cases are cited as sustaining, is applicable to the essential facts of this case, and, consequently, a new trial ought to have been allowed for want of sufficient evidence to support the verdict.

The evidence given in this cause was taken down by a short-hand reporter, and a long-hand and duly certified report of the evidence so given was made by the reporter and filed with the clerk of the court below. A map of Wesley station and its immediate vicinity and some other papers in writing, which were put in evidence, were attached to this long-hand report, and are referred to and identified by it as exhibits which constitute a part of the evidence. This original long-hand report of the evidence, with the exhibits attached, has been embraced in, and certified to us as a part of, the bill of exceptions.

The point is made that the bill of exceptions shows upon its face that it does not contain all the evidence given in the cause, because the accompanying exhibits are not copied into the long-hand report of the evidence, and because original papers can not be certified to us as a part of the transcript of the proceedings below.

It is true, that, under our former practice, and as a general rule now, a paper read in evidence must be copied into the transcript of the bill of exceptions at some appropriate place. It is also true, that, as a general rule, an original paper can not be certified or transmitted as a part of the transcript of the proceedings from which an appeal is prosecuted to this court. But the long-hand report of the evidence before us is not, and does not purport to be, a transcript of the evidence introduced at the trial. It is, under section 4010, R. S. 1881, an original manuscript or document incorporated in the bill of exceptions. It follows that original papers read

in evidence, and accompanying and properly identified by such long-hand report, may be treated in this court as embraced within, and constituting a part of it. The exhibits in question are, consequently, before us as a part of the evidence, and hence we have no reason for concluding that the bill of exceptions does not contain all the evidence given in the cause. *Marshall* v. *State, ex rel.*, 107 Ind. 173 ; *Wagoner* v. *Wilson*, 108 Ind. 210.

The judgment is reversed, with costs; and the cause is remanded for a new trial.

Filed Jan. 11, 1887.

### ON PETITION FOR A REHEARING.

NIBLACK, J.—A petition for a rehearing has been filed in this case, and in a brief accompanying it, bitter complaint is made that we did not at the former hearing consider the cause upon the theory upon which it was tried in the court below, accompanied with an intimation that we certainly did not read the evidence given at the trial with as much care as it was our duty to have done in justice to the appellee.

We, nevertheless, did read the evidence very carefully, and, although we did not deem it then necessary to say so, we came to the conclusion that the case had been tried upon an utterly erroneous theory, and that the judgment might have been rightfully reversed for that reason alone.

The averment of the complaint was, as has been already stated, that the horses *entered* upon the railway track at a point at which it was not securely fenced, and the evidence showed beyond all controversy that they entered the track, or, which was, in legal contemplation, the same thing, into an open area adjoining the track, at Wesley station, near, if not quite, a half a mile east of where four of the horses were killed, and a very material distance east of the place at which the other horse ran into the cattle-pit and was also killed.

The real condition of the track with reference to fencing,

at Wesley station, became, therefore, under the issues and the evidence, the controlling question at the trial.

In cases like this, it is the condition of the road at the place at which the animals entered upon the track, and not where they were killed, which becomes the material question for decision. *Toledo, etc., R. W. Co.* v. *Stevens,* 63 Ind. 337 ; *Wabash, etc., R. W. Co.* v. *Forshee,* 77 Ind. 158 ; *Louisville, etc., R. W. Co.* v. *Porter,* 97 Ind. 267 ; *Louisville, etc., R. W. Co.* v. *Thomas,* 106 Ind. 10.

It is true that much of the evidence introduced at the trial had reference to the condition of the cattle-pit into which one of the horses fell, and over which the others leaped, and counsel, during the progress of the trial, seemed to regard that as the pivotal question in the cause, but, for the reasons given, it was a merely incidental and immaterial question.

After the horses got upon the track in front of the locomotive, they would probably have been in less danger if there had been no cattle-pit, over which they were compelled to pass. The more impassable the cattle-pit may have been, the greater obstruction it would have been to the horses in their effort to escape from the train. However securely constructed the cattle-pit in question may have been, and however well kept in repair, it would have afforded the railway company no defence if its road ought to have been fenced where the horses *entered* upon it, that is, at Wesley station.

If counsel choose, and are permitted by the *nisi prius* court, to try a cause upon a theory outside of any issue formed by the pleadings, it does not follow that the cause must be reviewed in this court upon the same theory ; on the contrary, such a trial is mis-trial, and can not be sustained by this court, except, perhaps, in a case in which a palpably just conclusion has been reached upon the real merits of the cause.

The petition for a rehearing is overruled.

Filed Jan. 26, 1887.