The Indianapolis, Decatur and Western Railway Company v. Clay.

No. 254.

## THE INDIANAPOLIS, DECATUR AND WESTERN RAILWAY COMPANY v. CLAY.

RAILROAD.—*Killing of Animals.—Fencing of Track.—Burden of Proof When Company Denies Obligation to Fence.—Evidence.*—In an action against a railroad company to recover damages for the killing of animals which entered upon the track at a point where it was not fenced, the burden of proof is upon the defendant who seeks to defeat a recovery upon the ground that the company was not bound to maintain a fence at that point, as it would have endangered the lives of its employees engaged in switching, and a verdict in favor of the plaintiff will not be disturbed where it does not clearly appear from the evidence that the maintenance of a fence and cattle guards at the point where the cattle entered upon the track would have endangered the safety of the employees of the company.

SAME.—*Pleading.—Relief From Obligation to Fence.—General Denial.*—Proof of conditions which would release a railroad company from the duty of fencing its track at a particular point may be given under the general denial.

From the Boone Circuit Court.

*R. B. F. Peirce,* for appellant.

*T. J. Cofer* and *C. C. Hadley,* for appellee.

CRUMPACKER, J.—This action was commenced by Clay against the railroad company to recover damages for killing three horses and a mule which entered upon the company's track at a point where it was not fenced.  The action was brought in the Hendricks Circuit Court, and was carried to the Boone Circuit Court on change of venue.

The answer was the general denial, and the trial resulted in a verdict and judgment for the plaintiff for $375.

The company appealed from the judgment, and the only question presented by the record for decision relates to the sufficiency of the evidence to support the verdict.

The ownership, value and destruction of the animals were admitted by the appellant upon the trial, and also that they entered upon the railroad and were killed at a point where

it was not fenced, but it is contended that the evidence shows without conflict that the appellant was not required to fence its road at that place.

The evidence showed that the appellant's road runs east and west through the village of North Salem, in Hendricks county, and that it has a station-house and grounds for the use of the public, and does a general freight and passenger business at such station. It has one side-track 1,333 feet long at such station, and the station-house is located between the main track and the side-track. The east switch connecting the side-track with the main track is 490 feet east of the station-house, and 552 feet east of this switch there is a trestle bridge several hundred feet long, under which, near the west end, runs a public highway. At the east switch the railroad embankment is about eight feet high, and it gradually increases in height to the bridge, where it is about seventeen feet high. The track is not fenced west of the bridge, and the animals went upon it a few rods west of the bridge and were run upon and killed by a locomotive about 200 feet east of the switch. Most of the business of receiving and discharging freight and loading and unloading cars is done at the station-house and west of it along the side-track, but the loaded cars are mostly taken off the side-track through the east switch. From the depot to the bridge the right of way is 300 feet wide, and is used but little by the company or the public except upon one side, where it is used to some extent as a driveway. During some days a large number of cars were left upon and others taken off the side-track, and on other days no business of that character would be done. One witness, who testified on behalf of the appellee, and who appeared to be in a position to know of the amount of business transacted, estimated that, on the average, two empty cars were left and two loaded cars were taken away each day. The side-track often had a large number of cars standing upon it, and in removing and adjusting them it was necessary for brakemen to go between them to couple and

uncouple cars along the side-track and to walk along the side of trains for this purpose, and for the purpose of adjusting the switches, and occasionally the main track east of the east switch was used in this manner. The embankment was wide enough so that one could walk along the side of a train with but little inconvenience. An average freight train would cover the entire track from the east switch to the bridge, and it was customary and usual in running cars upon the side-track at the east end to slacken the speed of the train before reaching the switch, uncouple the cars to be run in from the balance of the train in the rear, and for a brakeman to go ahead and adjust the switch and throw the car on the side-track by what is known as a " flying switch."

The road west of the bridge could not be properly fenced without putting wing fences and cattle guards across the track on the east or west side of the east switch. If they should be put in west of the switch, cattle guards would be required in both the main and the side-track; if east of the switch, a cattle guard in the main track would be sufficient. Appellant insists that cattle guards on either side would have to be in such close proximity to the switch that it would obstruct the free use of the road, and endanger the safety of the employees engaged in running trains.

The burden of showing that the road could not properly have been fenced where the animals entered upon it was with the appellant. *Chicago, etc., R. R. Co.* v. *Modesitt,* 124 Ind. 212; *Cincinnati, etc., R. R. Co.* v. *Jones,* 111 Ind. 259.

Proof of conditions which would relieve the company from the duty of fencing its track at a particular point may be given under the general denial. *Banister* v. *Pennsylvania Co.,* 98 Ind. 220; *Jeffersonville, etc., R. R. Co.* v. *Lyon,* 55 Ind. 477.

It is now firmly settled in this state that a railroad company is not required to fence its track at a point where a fence would interfere with the operation of the road in the discharge of its duty to the public, or endanger the safety of

The Indianapolis, Decatur and Western Railway Company v. Clay.

its employees in operating it. *Indiana, etc., R. W. Co.* v. *Quick*, 109 Ind. 295 ; *Indiana, etc., R. W. Co.* v. *Sawyer*, 109 Ind. 342 ; *Fort Wayne, etc., R. W. Co.* v. *Herbold*, 99 Ind. 91 ; *Lake Erie, etc., R. W. Co.* v. *Kneadle*, 94 Ind. 454 ; *Evansville, etc., R. R. Co.* v. *Willis*, 93 Ind. 507.

The question to be determined is would cattle-pits in the track in such proximity to the switch as would be required to fence the appellant's road at the point in controversy endanger the safety of its operatives ?

We are not permitted to consider the opinions of witnesses upon this question, because it is a conclusion to be drawn from the facts by the jury or the court where the. facts are undisputed. *Chicago, etc., R. W. Co.* v. *Modesitt, supra; Indianapolis, etc., R. W. Co.* v. *Hale*, 93 Ind. 79.

The question is one not entirely free from perplexity. It is a matter of universal knowledge and observation that trainmen often walk along by the side of trains, and must go between cars in coupling and uncoupling them, and this is frequently done while they are in motion. It is quite a general practice for brakeman to go ahead of trains and open switches for them to enter upon side-tracks. These things occur at all times of day and night and in all kinds of weather, and they are such that we are bound to take judicial notice of them as items of common and general knowledge. *Hedderich* v. *State*, 101 Ind. 564.

In the case of *Evansville, etc., R. R. Co.* v. *Willis*, *supra*, under facts somewhat similar to those in the case before us, it was held that the company was not required to fence its track. The court said : " The facts about which there was no dispute show, we think, that cattle-guards between the switch and the bridge would be hazardous to the safety of the railroad employees in switching cars and trains. Under the circumstances the railroad was, in our opinion, excused from fencing at the place in question." In this case the switch was upon quite a steep grade, and this fact seems to have influenced the decision to some extent.

In the case of *Lake Erie, etc., R. W. Co.* v. *Kneadle, supra,* the court said : "A cattle-guard could not have been placed at the crossing of the street called West street without endangering the lives of persons engaged in managing the freight trains of the company. The adjudged cases declare that a railroad company is liable to its servants if it negligently or wrongfully makes unsafe and dangerous places in its tracks. Its duty with respect to its track is much the same as that to which it is held respecting its machinery." This case *seems* to base the exemption of the railroad company from the duty of fencing under such circumstances upon the ground that the company might, otherwise, be liable for injuries resulting to its servants on account of its unsafe track. In our opinion higher and more humane reasons exist for the immunity. The law does not require, or even permit, one, in order to protect the property of another, to do a thing in the prosecution of a legitimate business, which will jeopardize the safety of human life or limb. It is a question of humanity rather than of dollars and cents.

From these authorities it follows that, as a matter of law, it is not proper to put cattle-guards in a railroad track at a point where the operatives of the road may be required to go in the *usual* and *ordinary* course of business for the purpose of coupling, uncoupling, or switching cars or trains. Conditions might arise which would make it necessary for railway operatives to go between cars to couple or uncouple them at any point along the road, but where such occurrences, from the nature of the business, would be rare, the exemption from the duty of establishing suitable cattle-guards does not apply.

In the case before us, the evidence was chiefly directed to the effect of maintaining cattle-guards at a distance of from 50 to 100 feet from the switch. It was not made to appear how far from the switch such dangerous obstructions should be in order to accommodate the convenience and safety of employees who go ahead, to adjust the switch for trains. Nor

The Indianapolis, Decatur and Western Railway Company *v.* Clay.

was it shown satisfactorily, how far east of the switch the main track was *occasionally* used in coupling and uncoupling cars. A cattle-guard 200 feet east of the switch might have been maintained with comparative safety so far as we are advised by the evidence, and this would have kept the appellee's animals off the track. The burden being with the appellant, it has failed to show that the track could not have been fenced from a point 200 feet east of the switch to the bridge with reasonable safety, and we can not, therefore, say as a matter of law that it had performed its duty to the public.

The judgment is affirmed.

Filed Sept. 30, 1891.

## ON PETITION FOR A REHEARING.

CRUMPACKER, J.—In accordance with a very earnest request by counsel for appellant in a petition for rehearing, we have re-examined the evidence in this case in a very painstaking manner. And while we confess it is unsatisfactory, yet we can not say that it coerces the conclusion that appellant should not have fenced its road at the point where appellee's animals entered upon it.

In rare instances, under the inflexible rules of this court, we are compelled to perform the ungracious task of approving judgments which our individual consciences condemn.

The petition for rehearing is overruled.

Filed March 19, 1892.