The Toledo, St. Louis and Kansas City Railroad Company *v.* Moody.

No. 509.

## THE TOLEDO, ST. LOUIS AND KANSAS CITY RAILROAD COMPANY *v.* WOODY.

RAILROAD.—*Action·Against for Killing Animals.*—*Duty as to Fencing.*—*Burden of Proof.*—While a railroad company is not required to fence its road at a place where a fence would interfere with the proper discharge of its duty to the public or jeopardize the safety of operatives in charge of trains, still where the fencing would probably but slightly increase the dangers to trainmen it can not be said as a proposition of law that the company was relieved from the obligation of fencing. The burden of showing that a railroad is not required to be fenced at a given point is with the company. For a discussion of the evidence sustaining a verdict against the defendant for not fencing its road at a given point, see opinion. ·

From the Tipton Circuit Court.

*C. Brown, S. O. Bayless* and *C. G. Guenther*, for appellant.

*J. C. Blacklidge, W. E. Blacklidge, C. C. Shirley* and *B. C. Moon*, for appellee.

CRUMPACKER, J.—This action was brought by the appellee to recover damages from the appellant for killing a mare and colt, which entered upon appellant's railroad at a point in Howard county where it was not securely fenced. The cause was taken to Tipton county by change of venue, where it was tried.

The only question presented by the appeal relates to the sufficiency of the evidence to sustain the verdict. There was no question respecting the ownership and value of the animals or the fact that they entered upon the railroad and were killed at a point in Howard county where such road was not fenced. But it is insisted that appellant could not have fenced its road at that point without impairing its efficiency as a public carrier, and endangering the safety of employees operating trains. The evidence shows that the railroad runs east and west

through the village of Russiaville, in Howard county, and a regular station is maintained thereon at such village. Union street, the principal north and south street in Russiaville, crosses the railroad about seventy-five feet east of appellant's depot. East of Union street, about six hundred feet, is a bridge in the railroad about eighteen feet above the surface of the ground, and from the street to the bridge along the north side of the right of way a fence is maintained by adjoining property owners. For about two thirds of the distance from the bridge to the street along the south line of the right of way a fence is maintained in the same manner. The right of way is one hundred feet wide, and there are no wing fences or cattle-guards between the street and bridge, and appellee's animals went upon the track and were killed between those points. There is one side-track at said station, the east end of which is about two hundred feet west of the east side of union street.

Passengers embark and disembark at the station house, and freight is received and discharged west of the station house along the side-track. Wing fences and cattle-guards are maintained about seventy-five feet west of the switch at the west end of the side-track, and no accident or special inconvenience has resulted therefrom. Several witnesses testified on behalf of appellant that most of the switching of cars was done at the east end of the side-track, and the main track, from the east switch to the bridge, was frequently used for that purpose; that trainmen were required to go between cars for the purpose of coupling and uncoupling them at all points between the east switch and the bridge, and that cattle-guards in the track at any place between those points would greatly increase the danger to men running trains.

Upon the other hand, several witnesses living in the vicinity of the station grounds testified that only two trains a day did any switching there and very nearly as

much switching was done at the west end of the side-track and through the west switch as at the east end; that the ground was level about the east side of Union street, and cattle-guards there would increase the danger but slightly.

A railroad company is not required to fence its road at a place where a fence would interfere with the proper discharge of its duty to the public or jeopardize the safety of operatives in charge of trains. *Indiana, etc., R. W. Co.* v. *Quick,* 109 Ind. 295; *Indiana, etc., R. W. Co.* v. *Sawyer,* 109 Ind. 342; *Ft. Wayne, etc., R. W. Co.* v. *Herbold,* 99 Ind. 91; *Lake Erie, etc., R. W. Co.* v. *Kneadle,* 94 Ind. 454.

But the burden of showing that a railroad is not required to be fenced at a given point under the rule above announced is with the company. *Chicago, etc., R. W. Co.* v. *Modesitt,* 124 Ind. 212; *Cincinnati, etc., R. W. Co.* v. *Jones,* 111 Ind. 259; *Indianapolis, etc., R. W. Co.* v. *Clay,* 4 Ind. App. 282.

The vocation of running trains upon railroads involves many risks of the personal safety of those engaged in it, and it is not the policy of the law to materially enhance such risks simply for the protection of animals. But while the law estimates human life and safety as paramount in importance to property, some regard must be had and some risks must be incurred by those engaged in the railroad business for the protection of property. If the increased danger is slight, and the destruction of property to be averted is of considerable importance, the law will require the danger to be incurred. Every cattle-guard constructed in a railroad track in a slight degree, at least, increases the dangers to trainmen, because by accident or otherwise they may be required to go between cars for the purposes of coupling or repairs at all points along the road. It is only where a prudent man would not incur the risk in order to avoid the consequences at

stake, that a railroad company may avail itself of the exemption to fence its road at a particular point on account of the personal perils it might entail.

In the case before us the road between the street and bridge was fenced on the north side and about two-thirds of the way from the bridge to the street on the south side, thus forming a sort of *cul de sac,* into which animals were very likely to be driven and entrapped.

The liability of railroad corporations for stock killed on account of the absence of fences is imposed by law in some measure as a police penalty, to impel them to fence their roads and thus promote the safety of travel. *Chicago, St. Louis, etc., R. R. Co.* v. *Fenn,* 3 Ind. App. 250; *New Albany, etc., R. R. Co.* v. *Maiden,* 12 Ind. 10.

If the surroundings are of such a character as to materially increase the liability of collisions with animals, thus jeopardizing the safety of travel, courts and juries should take them into consideration in determining the duty of the company in respect to the maintenance of fences.

Appellant voluntarily constructed and maintained cattle-guards in its track within seventy-five feet of the switch at the west end of the side-track. According to the testimony of appellee's witnesses, the work performed at the east end of the side track and through the east switch was but little more than that performed at the other, and the increased danger occasioned by cattle-guards would be slight. Cattle-guards and wing fences at the east side of Union street would protect that part of the railroad where appellee's animals entered and were killed, and still leave about two hundred feet clear of obstructions between the cattle-guards and the east switch. In view of the conditions increasing the liability of collisions and the perils to public travel and that the remedy would probably increase but slightly the dangers to trainmen, we can not say as a proposition of law that appel-

lant was not required to fence its road at the point where appellee's animals entered upon it and were killed.

The judgment is, therefore, affirmed.

Filed March 30, 1892; petition for a rehearing overruled Oct. 1, 1892.