Filed Jan. 30, 1894.

---◆---

No. 1,049.

## THE TOLEDO, ST. LOUIS AND KANSAS CITY RAILROAD COMPANY *v.* FLY.

RAILROAD.—*Duty to Fence and Maintain Cattle-Guards.—Killing of Animal.—Denial of Obligation to Fence, etc.—Burden of Proof.—Evidence.*—A railroad company is not required to fence its track or put in a cattle-guard at a point where a fence or cattle-guard would materially interfere with the operation of the road in the discharge of its duty to the public, or would endanger the safety of its employes in operating it.   But the burden of showing that a railroad ought not to be fenced, or a cattle-guard put in at a given place, is upon the railroad company; and where there is nothing in the evidence to indicate that the operation of the railroad, with reference to its duty to the public, would be interfered with, a judgment for damages for the killing of an animal which entered upon the track at a point where it was not fenced and a cattle-guard not maintained, will not be disturbed on appeal.

From the Montgomery Circuit Court.

*C. Brown, S. O. Bayless* and *C. G. Guenther,* for appellant.

*J. West,* for appellee.

GAVIN, J.—Appellee sued for damages by reason of the

killing of his horse, which entered upon appellant's track at a point where it ought to have been, but was not, fenced.

The only error argued relates to the sufficiency of the evidence, and the only point made upon that is that it is conclusively shown that, at the place where the horse entered, the company was not bound to fence.

There is evidence tending to show that the horse entered upon the appellant's right of way on the north side of it, from a highway which crossed it and where there was no cattle guard and wing fences. The railroad runs east and west, the highway runs northwest and southeast, crossing the railroad at an angle. This crossing is about one-quarter of a mile east of appellant's depot, at the town of Wingate. On the north side of the railroad there is a fence extending from the crossing east about seven hundred and seventy feet to a cattle-guard with proper wing fences. On the south side of the railroad there is no fence from the crossing to this cattle-guard. From this cattle-guard a switch track runs about three hundred feet west, where it joins the main track, the east end of the switch being a dead end, south of this switch track is a tile mill, and south of it a saw mill. The triangular piece of ground occupied by the tile mill and saw mill is open and unfenced on the southwest where the highway runs along it. From the crossing east to the west end of the switch is about four hundred and seventy feet. On the west side of the highway crossing, and eighty feet from where the horse entered the right of way, there is a cattle-guard and wing fences. The switch was put in and used solely to load tile from the tile factory, except there were perhaps at one time some cars of lumber on the switch, for a house for the owner of the tile factory. How much tile was loaded there, whether one car load or one hundred a year, does

not appear.  Cars have been seen on the switch track, but how frequently is not shown.

One witness testified that he had seen some switching done there, but had never seen any brakeman couple or uncouple cars there, although it was necessary to do so in getting cars in and out of the switch, and was also necessary, in so doing, for a brakeman to pass over some portion of the track from the crossing to the switch, what portion would be passed over being dependent on circumstances.  A train is ordinarily about eight hundred feet long.

It further appears from the evidence, that there was, seven or eight years ago, a switch fence along the south side of the railroad from this crossing east to where the cattle-guard now is, and cattle-guards at the crossing, both a switch and the tile factory being then in existence, the present switch, however, having been put in to replace the former one torn out.

The location of the crossing and switch is shown by the following diagram:

It is settled law that a railroad company is not required to fence its track at a point where a fence would materially interfere with the operation of the road in the discharge of its duty to the public, or endanger the safety of its employes in operating it, but the burden of show-

ing that the road ought not to be fenced at the given place is upon the railroad company. *Toledo, etc., R. R. Co.* v. *Woody,* 5 Ind. App. 331; *Terre Haute, etc., R. R. Co.* v. *Schaefer,* 5 Ind. App. 86; *Pennsylvania Co.* v. *Lindley,* 2 Ind. App. 111; *Chicago, etc., R. R. Co.* v. *Modesitt,* 124 Ind. 212; *Pennsylvania Co.* v. *Mitchell,* 124 Ind. 473.

Counsel for the appellant insist that upon the evidence in this case we should adjudge, as a matter of law, that the road could not be fenced at the place in question.

Reliance is placed largely upon the case of *Indianapolis, etc., R. W. Co.* v. *Clay,* 4 Ind. App. 282, and cases cited therein. Without entering into a consideration of the propositions of law therein stated, which are relied upon by appellant, it is sufficient to say that the decision itself in that case is conclusively against appellant's position in this case.

There the business of the company at the point named and its necessities were proven much more fully than here, and still it was decided that the cattle-guard might have been maintained within two hundred feet of a switch.

In the case at bar there were four hundred and seventy feet of clear space between the crossing and the switch. If two hundred and seventy feet had been fenced off and protected, there would still have been more than enough left for the safe use of the switch, under this decision. *Toledo, etc., R. R. Co.* v. *Woody, supra,* is to the same effect, holding that the court could not say, as a matter of law, that the company could not safely erect cattle-guards and fences within two hundred feet of a switch.

There is, in the evidence, nothing to indicate that the operation of the road, with reference to its duty to the public, would be interfered with. The switch was for the use of the tile factory only. How many cars it

needed does not appear, but if it needed and used many cars they could plainly be thrown into the switch without requiring the brakeman to travel over all of this four hundred and seventy feet.

The fact that the company maintained a cattle-guard on the west side of this crossing was strong evidence that it did not need for switching purposes a free space equal to the full length of the train, as argued by counsel.

Our conclusion is that there was no error.

Judgment affirmed.

Filed Jan. 9, 1894.