## THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY v. VINCENT.

[No. 8,741. Filed October 3, 1915. Rehearing denied December 17, 1915. Transfer denied January 13, 1916.]

1. RAILROADS.—*Animals on Tracks.—Liability for Injuries.— Statutes.*—In order to render a railroad company liable under §§5436-5442 Burns 1914, §§4025-4031 R. S. 1881, authorizing recovery for stock killed or injured on any railroad at any place where the same is not securely fenced, it must appear that the railroad was not securely fenced at the place where the stock entered thereon, and that such stock was injured or killed by some locomotive, car or other carriage operated on such railroad. p. 477.

2. RAILROADS.—*Animals on Tracks.—Statutory Liability.—Fences. —Burden of Proof.*—To escape liability for animals killed or injured upon its tracks imposed by §§5436-5442 Burns 1914, §§4025-4031 R. S. 1881, a railroad company has the duty to show affirmatively that the place where the animals entered upon its tracks was one which it was not bound to fence. p. 478.

3. RAILROADS.—*Animals on Tracks.—Injury.—Duty to Fence.— Question for Court or Jury.*—In an action under the statute against a railroad company to recover for stock injured or killed upon its tracks, where the facts as to the place where the stock entered, and the character of the place, are undisputed, the question of whether the place was one which the statute requires the company to fence is a question of law for the court; but where the evidence is conflicting as to the character of the place, the question is for the jury. pp. 479, 480.

4. RAILROADS.—*Statutory Provisions.—Duty to Fence.*—Under §§5436-5442 Burns 1914, §§4025-4031 R. S. 1881, a railroad company is not required to fence its road at stations, though the same are not frequently used, nor at places where fencing would interfere with the business and operations of the company and the safety of its employes, or where it would interfere with the public convenience. p. 480.

5.  RAILROADS.—*Animals on Tracks.—Action for Injuries.—Evidence.*—In an action against a railroad company under §§5436-5442 Burns 1914, §§4025-4031 R. S. 1881, to recover for the death of a horse, evidence showing that the horse while hitched to a buggy strayed from the place where left by plaintiff, that at a point where the tracks crossed a highway it turned east along the tracks leaving tracks of the buggy wheels between the rails, that the buggy was completely demolished, and that the horse was standing near the place of collision and was so injured that it died within ten minutes after the collision, warranted an inference that the horse was either on the track or so close thereto as to have been struck by the train, and was sufficient to sustain the verdict for plaintiff on that issue. pp. 480, 483.

6.  RAILROADS.—*Animals on Tracks.—Liability for Injuries.—Statutes.*—Section 5436 Burns 1914, §4025 R. S. 1881, imposing liability on railroad companies for stock killed upon their tracks by "locomotives, cars or other carriages", etc., is not to be interpreted as meaning that in every case there must have been an actual contact or touching of the injured animal by the company's locomotive, car or other carriage in order to create liability. p. 482.

From Decatur Circuit Court; *Hugh Wickens,* Judge.

Action by Edwin B. Vincent against The Cleveland, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*L. J. Hackney, F. L. Littleton, J. O. Cravens, T. S. Cravens* and *T. E. Davidson,* for appellant.

*J. H. Connelley,* for appellee.

HOTTEL, J.—This is an appeal from a judgment in favor of appellee against appellant for $87.50, damages for the loss of a horse killed upon appellant's railroad. The overruling of appellant's motion for a new trial is the only error assigned. The only grounds of this motion relied on for reversal are those which challenge the verdict of the jury as not being sustained by sufficient evidence and as being contrary to law. The complaint is based on §§5436-5442 Burns 1914, §§4025-4031 R. S. 1881, which authorize a recovery for stock

killed or injured by the locomotive, cars, or other carriages on any railroad in this State where such railroad is not "securely fenced in". In construing this statute, both the Supreme Court and this court have held two things essential to recovery, viz., (1) that the railroad right of way was not securely fenced in at the place where the stock entered thereon, and (2) that such stock was injured or killed by some locomotive, car or other carriage operated on such railroad. *Peru, etc., R. Co.* v. *Hasket* (1858), 10 Ind. 409, 71 Am. Dec. 335; *Ohio, etc., R. Co.* v. *Cole* (1872), 41 Ind. 331, 332; *Baltimore, etc., R. Co.* v. *Thomas* (1877), 60 Ind. 107; *Croy* v. *Louisville, etc., R. Co.* (1884), 97 Ind. 126; *Louisville, etc., R. Co.* v. *Thomas* (1886), 106 Ind. 10, 5 N. E. 198; *Jeffersonville, etc., R. Co.* v. *Dunlap* (1887), 112 Ind. 93, 13 N. E. 403; *Childers* v. *Louisville, etc., R. Co.* (1895), 12 Ind. App. 686, 41 N. E. 21; *Pittsburgh, etc., R. Co.* v. *Vance* (1915), 58 Ind. App. 1, 108 N. E. 158.

It is insisted by appellant that as to the first of these elements the evidence shows that the place where appellee's horse entered the right of way was a place where, under the law, appellant was not required to fence and, that as to the second element there is a total failure of evidence.

It may be said in support of appellant's first contention that, while the statute in question is in general terms made applicable to all cases where 2. the railroad is not "securely fenced in", the courts have very properly so construed the statute as to engraft on it some exceptions. However, such decisions impose on the railroad company the duty of showing affirmatively that the place where the animals entered was one that it was not bound to fence. *Chicago, etc., R. Co.* v. *Modesitt* (1890), 124 Ind. 212, 24 N. E. 986; *Evansville, etc.,*

*R. Co.* v. *Mosier* (1885), 101 Ind. 597; *Cincinnati, etc., R. Co.* v. *Parker* (1887), 109 Ind. 235, 9 N. E. 787; *Toledo, etc., R. Co.* v. *Fly* (1893), 8 Ind. App. 602, 36 N. E. 215. In this connection it is also argued by appellant that "whether or not the

3. place where the mare entered and where she was when the injury occurred was one required to be fenced was a question of law for the court and not an issue of fact for the determination of the jury." Citing *Steward* v. *Pennsylvania Co.* (1891), 2 Ind. App. 142, 28 N. E. 211, 50 Am. St. 231; *Jeffersonville, etc., R. Co.* v. *Peters* (1891), 1 Ind. App. 69, 27 N. E. 299; *Atchison, etc., R. Co.* v. *McCall* (1915), 150 Pac. (Okl.) 173, 175; *Abbott* v. *Beaumont, etc., R. Co.* (1915), 177 S. W. (Tex. Civ. App.) 1052. There are statements in these cases that lend support to appellant's contention. The language, however, used by this court in the first two cases cited has been explained and limited by later expressions of such court on the same subject. Of course, if the facts as to the place where the stock entered, and the character of the place are undisputed, the question is wholly one of law; but where these facts are disputed, the question then becomes a mixed question of law and fact. *Baltimore, etc., R. Co.* v. *Dickey* (1909), 43 Ind. App. 509, 87 N. E. 1047; *Toledo, etc., R. Co.* v. *Cupp* (1893), 9 Ind. App. 244, 36 N. E. 445. When the evidence is conflicting as to whether a railroad track can properly be fenced at a given point, the question should be submitted to the jury under proper instructions. *Pennsylvania Co.* v. *Lindley* (1891), 2 Ind. App. 111, 28 N. E. 106; *Scheerer* v. *Chicago, etc., R. Co.* (1895), 12 Ind. App. 157, 39 N. E. 756.

A railroad company is not required to fence its road at stations used for receiving or discharging passengers or freight, although such stations are

not frequently used, and such company is not required to fence its road "where fencing would interfere with the business and operations of the company and the safety of its employes in the discharge of its duty to the public", or "where public convenience will not permit fences to be erected." *Chicago, etc., R. Co.* v. *Ness* (1914), 56 Ind. App. 285, 105 N. E. 250; *Indiana, etc., R. Co.* v. *Quick* (1887), 109 Ind. 295, 298, 9 N. E. 788, 925; *Steward* v. *Pennsylvania Co., supra; Fort Wayne, etc., R. Co.* v. *Herbold* (1884), 99 Ind. 91; *Jeffersonville, etc., R. Co.* v. *Peters, supra,* and cases cited.

It is not contended by appellant that its railroad, at the point in question, could not be fenced, but it claims that at such place its right of way is used as station grounds for unloading and loading freight and that therefore it was not required to fence at such point. The evidence on this point was conflicting and hence it was the duty of the court to submit such question to the jury under proper instructions applicable thereto.

As to the second element, *supra,* necessary to recovery appellant insists that there is no direct evidence of contact between its locomotive and appellee's horse, and no evidence from which such contact may be inferred. The evidence on this point is by no means satisfactory. It shows substantially the following facts, viz., appellee left his horse on the night in question tied to a weight and the weight thrown around one of the posts of a hitch rack in the village of Spades, Ripley County, Indiana. Such hitch rack was south of and near to the point where the highway crosses appellant's railroad. The railroad at this point consisted of two main tracks, the one on the south being known as the east main track, and the one on the north being known as the west main track. Some time after the

horse had been left at the hitch rack it, as indicated by tracks and marks, started for home dragging the weight with it. As testified to by one of appellee's witnesses, the route taken could be traced by the tracks and mark made by the weight dragging on the ground from the hitch rack north to the point where the railroad crossed the highway. From this point on to where the horse and buggy were found, after the collision, the evidence varies. One of appellee's witnesses testified that it came from the hitch rack and went north until it just got to the track and then turned east on the track; "that you could see the tracks of the buggy. When I got to the track it looked as if one wheel went over the track. One wheel was in the track and the other was on the outside of the track." The left wheels were "just about in the middle of the track" and kept to the middle of the track just the length of the railroad iron or about 30 to 32 feet. The left wheel got over the south rail of the track about six feet east of the crossing. The head brakeman on the train that collided with appellee's horse and buggy testified on direct examination by appellee's attorney that he was on the fireman's seat on the left side of the engine cab and that he saw the top of a buggy wheel; that "it was located a foot and a half or two feet north of the north rail on the east bound track." The same witness on cross-examination, in response to a question as to where it was that he testified that he first saw the buggy wheel, answered: "I told you about a foot or a foot and a half south of the north rail." The evidence shows further that the buggy would weigh 500 pounds; that the pilot of the engine raised the buggy up and threw it over on its side; that the buggy was mashed to pieces, lying flat on the ground about

seven feet from the south rail of the tracks; that the rim of one of the buggy wheels was found on the pilot beam; that the speed of the train was about twenty-two miles an hour; that the pilot beam on the locomotive extended out beyond the rails as far as the end of the ties; that the horse was standing six to eight feet south of the track and west of and on a line with the buggy and with its head toward the west; that it was standing on three legs and had a hole in its side and seemed to be injured in the back; that it died in about ten minutes; that the buggy shaft on the side where the horse was injured was broken off. It seems to us that this evidence is sufficient to authorize the inference that the horse must have been on the track, or at least in such close proximity thereto that a striking would be unavoidable. In this connection however, it is urged by appellant, in effect, that the buggy was between the locomotive and horse and that this fact prevents the inference of direct contact between the locomotive and the horse; that the hole in the horse's side was in all probability caused by the broken shaft of the buggy and that the horse's injuries may all be accounted for by the forced contact of the buggy with the horse. In other words, it seems to be appellant's position that a striking of the buggy to which the horse was hitched does not bring the case within the operation of the statute as construed by the decisions of the Supreme Court and this court, first above cited. It is true that there is language used in some of the cases that would indicate that an actual contact or touching of the killed or injured animal by the company's locomotive, car or other carriage is necessary to create liability. The language of the statute, however, does not warrant such a construction. It is as follows: "Any railroad corporation, * * * shall be liable

* * * for stock killed or injured by the locomotives, cars or other carriages," etc. The authorities all agree that the injury or death of the animal in such a case must result from a collision of the railroad company's locomotive, car or other carriage with such animal, and it is in this sense, we think, that the courts have used the language relied on by counsel as supporting their contention. We do not interpret these decisions, or the language therein used, as meaning that in a case, like the one under consideration, where it is shown that death or injury to the animal resulted from a collision of the railroad company's locomotive, car or other carriage with a vehicle being drawn or conveyed by such animal, that in order to establish liability the plaintiff must go further and also show an actual contact or touching of such animal by the locomotive, car or other carriage. For the purposes of this case, it would seem that a collision with the buggy was a collision with the horse harnessed thereto and, that proof of the death of the horse from such collision, and as a direct and proximate result thereof, is sufficient to create liability under the statute, assuming, of course, that the other elements of such cause of action, were proven; but granting, without deciding that appellant's contention is correct, we are still of the opinion that the evidence, before indicated, viz., the location of the horse on the track, the width of the beam on the locomotive, the speed of the train, the weight of the buggy, the fact that when it was struck it was lifted up and, that one of its wheels was found on the flagstaff on the pilot beam, when considered in its entirety, is sufficient to warrant the inference of actual contact between appellee's horse and appellant's locomotive and hence, sufficient in any event to prevent our dis-

American Steel, etc., Co. *v.* Carbone—60 Ind. App. 484.

turbing the verdict of the jury on the ground of the insufficiency of the evidence in such respect. Judgment below is therefore affirmed.

NOTE.—Reported in 109 N. E. 810. As to the duty of a railroad company to maintain fences and cattle guards, see 21 Am. St. 289. As to what are depot grounds within the meaning of fence laws, see 7 L. R. A. (N. S.) 203. For a discussion of depot or station grounds as being within the purview of a statute requiring a railroad to fence its tracks see, 11 Ann. Cas. 20; Ann. Cas. 1912 D 628. See, also, under (1) 33 Cyc 1181, 1184; (2) 33 Cyc 1278, 1281; (3) 33 Cyc 1307; (4) 33 Cyc 1190; (5) 33 Cyc 1292; (6) 33 Cyc 1185.